**Richard M. CALLIHAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2003–SC–0183–MR.**

Supreme Court of Kentucky.

Aug. 26, 2004.

Michael J. Curtis, Michael J. Curtis Law Office, Ashland, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, George G. Seelig, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

Appellant, Richard Callihan, was indicted in the Greenup Circuit Court for two counts of rape in the first degree (Counts I and II), one count of sodomy in the first degree (Count III), and one count of criminal abuse in the first degree (Count IV). He entered a guilty plea to all counts conditioned on the preservation of his right to appeal the denial of his motion to suppress his confession. RCr 8.09. The trial court sentenced him to twenty years imprisonment for Counts I through III and ten years imprisonment for Count IV, to run concurrently for a total of twenty years. He appeals to this court as a matter of right, Ky. Const. § 110(2)(b), on the grounds that the trial court erroneously denied his motion to suppress his taped confession as it was obtained after he had become the focus of the investigation and before the police informed him of his right to counsel and his right to remain silent. Finding no error, we affirm.

Appellant resided with his girlfriend, Danielle M., her daughter, L.M., and her two sons, A.M. and E.M. An investigation into Appellant's treatment of Danielle's children began in May 2001 after the Department for Social Services (DSS) received a complaint regarding his disciplinary methods. When the investigation began, Appellant had lived with Danielle and her children for approximately three years. When initially interviewed by DSS, the children indicated that aside from an incident where Appellant made A.M. run up a steep bank carrying bricks on his shoulders, he had not abused them. However, the children later revealed that Appellant had punished them by making them stand naked. A few days later, DSS received information from Danielle that E.M. and L.M. told her that Appellant had sexually abused them.

This information resulted in a police investigation in which Kentucky State Trooper Greg Virgin and DSS worker Bentley Ratcliff interviewed L.M., E.M., and Appellant, on May 14, 2001. L.M. stated that Appellant had not sexually abused her during the first two years that he lived with her family. However, she described numerous sexual encounters with Appellant that began when she was ten years old. Appellant first asked her to perform oral sodomy on him, but L.M. refused. Later, as punishment for L.M.'s poor performance in school, he forced her to disrobe and raped her. As another punishment, he instructed her to perform oral sodomy on E.M., but E.M. would not allow her to do so. On another occasion, Appellant forced her to scrub the floor unclothed, while Appellant watched pornography. After she had scrubbed the floor, Appellant made her bathe with him. When they finished bathing, Appellant again raped her. L.M. made numerous references to additional incidents of sod-

omy and sexual intercourse and also revealed that Appellant threatened to harm her if she told her mother about the abuse.

E.M. described a sexual encounter with Appellant that occurred when he was eleven years old. He and Appellant had gone squirrel hunting and had drunk some whiskey upon returning home. The alcohol intoxicated E.M. and made him feel extremely hot, so to cool off, he removed all of his clothes except his underwear. He and Appellant entered a bedroom where Appellant played a pornographic movie. They both began to masturbate and Appellant told E.M. to perform anal sodomy on him. After E.M. did so, Appellant asked him to do it again, and E.M. refused. E.M. stated that this was the only sexual encounter he had with Appellant. He also corroborated L.M.'s claim that Appellant had ordered her to perform oral sodomy on E.M.

After speaking with E.M. and L.M., Virgin and Ratcliff requested that Appellant speak to them. Appellant agreed and voluntarily went to Ratcliff's office at DSS that evening at approximately 7:30 p.m. The first twenty to thirty minutes of the interview were not recorded or transcribed. The only proof of what happened during that portion of the meeting was Virgin's police report and his testimony during the suppression hearing. This testimony established, *inter alia*, that Virgin informed Appellant that he wanted the door closed for privacy reasons because a nearby custodian was vacuuming the floors. Appellant was also advised at the onset of the interview that he was not under arrest, that he was free to leave at any time, and that he had no obligation to answer questions. Virgin also stated that he informed Appellant that he would not be arrested that day and that Appellant subsequently admitted to sexually abusing E.M. and L.M. As revealed by the tran-

script and Virgin's testimony, Virgin informed Appellant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966), and immediately thereafter received Appellant's permission to record the remainder of the interview. Appellant again admitted to sexually abusing E.M. and L.M. He left after the interview, and police took him into custody the following day.

## MOTION TO SUPPRESS.

Citing *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), Appellant contends that the trial court erred in overruling his motion to suppress his taped confession. He asserts that the confession is defective because it was obtained without the benefit of *Miranda* warnings after the police had focused a criminal investigation on him. We first address the Commonwealth's claim that Appellant failed to preserve this issue for appellate review. Because the United States Supreme Court decided *Escobedo* on the right to counsel guaranteed by the Sixth Amendment and Appellant moved to suppress his confession on Fifth Amendment grounds, the Commonwealth asserts that he cannot now challenge his convictions on Sixth Amendment grounds. This assertion lacks merit because Appellant has not mounted a Sixth Amendment challenge, but rather argues that his confession should have been suppressed because he was not informed of his *Miranda* rights as required by the Fifth Amendment. Additionally, the Court has since declared that *Escobedo*'s primary purpose was to protect the Fifth Amendment right against self-incrimination. *United States v. Gouveia*, 467 U.S. 180, 188 n. 5, 104 S.Ct. 2292, 2297 n. 5, 81 L.Ed.2d 146 (1984); *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *Johnson v. New Jersey*, 384 U.S. 719, 729–30, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882 (1966).

At first blush, it would seem that we could decide this case simply on the grounds that Appellant did, in fact, receive *Miranda* warnings immediately before he gave the taped statement, which rehashed the contents of his unrecorded confession. However, the United States Supreme Court's recent decision in *Missouri v. Seibert*, 542 U.S. ——, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), precludes such a simple solution. In *Seibert*, police questioned a criminal suspect and intentionally withheld *Miranda* warnings until after she confessed. Almost immediately after the initial confession, they informed her of her *Miranda* rights, and then asked if they could record her statement. She agreed. The Court held that her confession was *Miranda*-defective even though she gave the second confession after receiving *Miranda* warnings. Four members of the Court held that the second statement was *per se* tainted because of the potential of the "question first" technique to weaken *Miranda*'s safeguards against the admission of coerced confessions:

> After all, the reason that question-first is catching on is as obvious as its manifest purpose, which is to get a confession the suspect would not make if he understood his rights at the outset; the sensible underlying assumption is that with one confession in hand before the warning, the interrogator can count on getting its duplicate, with trifling additional trouble. Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again.

*Id.* at ——, 124 S.Ct. at 2610–11. Justice Kennedy concurred in result only, stating that post-*Miranda* statements obtained using the "question-first" technique are

only invalid where police deliberately employ the technique to circumvent the suspect's *Miranda* rights. *Id.* at ——, 124 S.Ct. at 2616 (Kennedy, J., concurring). Because *Seibert* is a plurality decision, its holding is confined to the "position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (internal quotations and citations omitted). Here, the narrowest grounds are those set forth in Justice Kennedy's concurring opinion. Thus, absent an evidentiary hearing as to whether Virgin deliberately employed the "question-first" technique to circumvent Appellant's *Miranda* rights, we cannot dismiss his argument on the grounds that he, in fact, was informed of his rights.

We reject Appellant's argument that the mere fact that he was the focus of a criminal investigation entitled him to *Miranda* warnings prior to police questioning. It is well settled that *Miranda*'s holding is generally limited to custodial settings. *Escobedo* does not require that police "*Mirandize*" an interviewee simply because he or she has become the focus of an investigation. To hold otherwise would ignore well-settled precedent. The United States Supreme Court expressly limited *Miranda*'s warning requirement to custodial interrogation. *Miranda, supra,* at 444, 86 S.Ct. at 1612 ("Our holding ... is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.") (emphasis added). The Court has also made several post-*Miranda* pronouncements reaffirming *Miranda*'s limitation to custodial interrogation. *See, e.g., Johnson, supra,* at 729–30, 86 S.Ct. at 1779 ("Our opinion in Miranda makes it clear

that the prime purpose of these rulings is ... to assure that the person who responds to interrogation while in custody does so with intelligent understanding ....."). Indeed, *Miranda* recognized the necessity of warnings because of the potential of a *custodial environment* to overbear an individual's will to exercise his constitutional rights. *Moran v. Burbine,* 475 U.S. 412, 420, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986) ("In *Miranda v. Arizona,* the Court recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'") (quoting *Miranda, supra,* at 467, 86 S.Ct. at 1624).

Nor does *Escobedo, supra,* provide otherwise. Rather, its holding was also grounded in the coercive nature of police custody:

> [W]here, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, *the suspect has been taken into police custody,* the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, *and* the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "The Assistance of Counsel" in violation of the Sixth Amendment ....

*Id.* at 490–91, 84 S.Ct. at 1765 (emphasis added) (citations omitted). The Court decided *Escobedo* two years before *Miranda,* and has never construed *Escobedo* to require *Miranda* warnings simply because police have focused a criminal investigation on an individual who is subject to questioning. *See Johnson, supra,* at 733–34, 86

S.Ct. at 1781 (recognizing *Escobedo*'s limited holding); *Kirby, supra,* at 689, 92 S.Ct. at 1882 (citing *Johnson*'s limitation of *Escobedo* to its own facts). Indeed, the Court specifically rejected the "focus of the investigation" test as inconsistent with its holding in *Miranda. Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). In *Beckwith,* the defendant was questioned by two special agents from the Internal Revenue Service (IRS) at one of his residences. Because the IRS had conducted a thorough investigation of the defendant prior to questioning, he argued that his statements should have been suppressed because he was questioned without *Miranda* warnings after he had become the focus of a criminal investigation. The Court, rejecting this argument, held that because the defendant was not in custody, *Miranda*'s safeguards, designed to prevent coercion from overcoming an individual's constitutional rights, did not apply. *Id.* at 347–48, 96 S.Ct. at 1616–17.

Additionally, courts of this state adhere to the custodial interrogation requirement, despite Appellant's assertion to the contrary that *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672 (1985), *vacated in part by Skaggs v. Parker,* 235 F.3d 261 (6th Cir. 2000), *Wills v. Commonwealth,* Ky., 502 S.W.2d 60 (1973), *Wilson v. Commonwealth,* Ky., 476 S.W.2d 622 (1971), and *Jasper v. Commonwealth,* Ky., 471 S.W.2d 7 (1971), require otherwise. In *Farler v. Commonwealth,* Ky.App., 880 S.W.2d 882 (1994), the Court of Appeals, expressly addressing all of the aforementioned cases cited by Appellant, embraced the principle that *Escobedo* does not entitle a defendant to *Miranda* warnings absent custodial interrogation even if he has become the focus of a criminal investigation. *Id.* at 884–85. *See also Little v. Commonwealth,* Ky. App., 991 S.W.2d 141 (1999) (rejecting *Skaggs, Wills,* and *Jasper,* and noting that this Court has not yet rejected the focus of

the investigation test but has implicitly done so by reaffirming custodial interrogation requirement). Although this Court has never explicitly rejected the "focus of the investigation" test regarding the necessity of *Miranda* warnings, we do so now. This is not a change in the law, but a reaffirmation of our adherence to the custodial interrogation requirement. *Watkins v. Commonwealth,* Ky., 105 S.W.3d 449, 451 (2003) (recognizing that *Miranda* "requires the express declaration of a defendant's rights prior to *custodial interrogation* ") (emphasis added); *Adkins v. Commonwealth,* Ky., 96 S.W.3d 779, 791 (2003) ("Indeed, *Miranda,* itself, was concerned only with 'custodial interrogation' "); *Brown v. Commonwealth,* Ky., 780 S.W.2d 627, 628 (1989) (defendant not entitled to *Miranda* warnings because she was not subject to custodial interrogation).

As such, Appellant's statement was not *Miranda*-defective. He does not argue that he was in custody at the time of his confession, nor do the facts support such a finding. In *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam), the United States Supreme Court held that a criminal suspect interviewed by a police officer at the police station behind closed doors was not in custody. In support, the Court noted that the suspect was not taken by force to the police station, that police told the suspect that he was not under arrest, and that he was able to leave after the interview. *Id.* at 495, 97 S.Ct. at 714. Similarly, in the case *sub judice,* the trial court found that Appellant was not in custody at the time of his confession. Virgin testified at the suppression hearing that he told Appellant that he was free to leave at any time, that he had no obligation to answer questions, and that he would be able to return home after the interview. Thus, the trial court's finding that Appellant was not in custody

at the time of his confession is conclusive, RCr 9.78, relieving police of their obligation to inform him of his *Miranda* rights and obviating any need for a remand for reconsideration in light of the United States Supreme Court's recent decision in *Missouri v. Seibert.*

Accordingly, the judgment of conviction and the sentences imposed by the Greenup Circuit Court are affirmed.

All concur.