COMMONWEALTH OF KENTUCKY,
Appellant,

v.

Randall Scott LUCAS, Appellee.

No. 2004–SC–0075–DG.

Supreme Court of Kentucky.

June 15, 2006.

As Modified Aug. 2, 2006.

Gene Lewter, Lexington, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Todd D. Ferguson, Dennis W. Shepherd, Assistant Attorneys General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which reversed a judgment based on a conditional guilty plea that convicted Lucas of first-degree sexual abuse and second-degree sexual abuse. He was sentenced to a total of one and a half years in prison.

The sole issue is whether the interrogation during which Lucas confessed was noncustodial and therefore did not require a *Miranda* warning.

The Court of Appeals reversed the conviction holding that the motion to suppress should have been granted because Lucas was subject to custodial interrogation without the benefit of the *Miranda* warnings.

The police first interviewed Lucas on February 26, 2002, regarding a report of inappropriate touching of his stepdaughter. Lucas came to the police station voluntarily, was given *Miranda* warnings and was told that he was free to leave at any time, which he did after the questioning. The next day the police filed a criminal complaint for misdemeanor sexual abuse with regard to the stepdaughter and obtained an arrest warrant. The police detective also received an additional report from a nephew of Lucas who alleged that the defendant had abused him 20 years before when the nephew was about five years old.

The police again asked Lucas to come in for questioning on March 1, 2002, which he did voluntarily. On this occasion, he was not given *Miranda* warnings and was not told that he was free to leave at any time. The police detective informed him that she had filed a misdemeanor complaint for the incident with the stepdaughter, but did not tell him that she had obtained a warrant and intended to arrest him on that charge. The detective questioned Lucas further regarding the allegations of the stepdaughter and then inquired about the report from the nephew. Ultimately, he confessed to the abuse of the nephew during that period of questioning which lasted a little over one hour. He was then arrested.

Lucas sought to suppress his confession claiming that he did not make a knowing and voluntary waiver of his rights. After a suppression hearing at which the police detective was the only witness, the trial judge denied the motion to suppress finding that Lucas was not in custody when he made the confession. Lucas entered a conditional guilty plea to first degree sexual abuse, a felony, and second-degree sexual abuse, a misdemeanor. He reserved the right to appeal the denial of his motion to suppress. The Court of Appeals reversed the decision of the trial judge in a split opinion. One judge concurred in the result in the lead opinion and another dissented without opinion. The Court of Appeals decision was not published.

In an apparent misinterpretation of the trial court, the Court of Appeals opinion states that it was affirming the "finding of

fact" of the trial judge that the defendant was in custody during the second interview. However, a careful examination of the record indicates that the trial judge actually found that Lucas was not in custody during this questioning. This Court granted discretionary review.

## I. Standard of Review

■ The parties disagree on which standard of review should be used in considering the determination by the trial judge that Lucas was not in custody. The Commonwealth contends that the determination that Lucas was never in custody is a finding of fact and as such, this Court should review the decision under the clearly erroneous standard. *See Commonwealth v. Banks,* 68 S.W.3d 347 (Ky.2001). Lucas claims that whether he was in custody is a legal conclusion and not a finding of fact and thus should be reviewed *de novo, citing Stewart v. Commonwealth,* 44 S.W.3d 376 (Ky.App.2000).

This Court has used a de novo standard of review in deciding whether the Fifth Amendment protection against self-incrimination is applicable to a particular situation. *See Welch v. Commonwealth,* 149 S.W.3d 407 (Ky.2004). Both the U.S. Supreme Court and the Sixth Circuit Court of Appeals have held that the question of whether a defendant is in custody is a mixed question of law and fact to be reviewed *de novo. See Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) and *United States v. Salvo,* 133 F.3d 943 (6th Cir.1998). We also recognize that the findings of the trial judge are conclusive if supported by substantial evidence and the decision must have been demonstrated to have been clearly erroneous. *See Clark v. Commonwealth,* 868 S.W.2d 101 (Ky.App.1993) *citing* RCr 9.78 and *Harper v. Commonwealth,* 694 S.W.2d 665 (Ky.1985), *cert.*

*denied* 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).

We conclude that the standard of review in this case is *de novo.*

## II. Interrogation

Lucas alleges that he was in custody during the second questioning and should have received *Miranda* warnings again.

■ It has been held by the United States Supreme Court that *Miranda* warnings are only required when the suspect being questioned is "in custody." *Thompson v. Keohane, supra.* Custodial interrogation has been defined as questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of freedom of action in any significant way. *Thompson. Miranda* warnings are required only where there has been such a restriction on the freedom of an individual as to render him in custody. The inquiry for making a custodial determination is whether the person was under formal arrest or whether there was a restraint of his freedom or whether there was a restraint on freedom of movement to the degree associated with formal arrest. *Thompson; See also United States v. Mahan,* 190 F.3d 416 (6th Cir. 1999). Custody does not occur until police, by some form of physical force or show of authority, have restrained the liberty of an individual. *Baker v. Commonwealth,* 5 S.W.3d 142, 145 (Ky.1999). The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave. *Baker, supra, citing United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Some of the factors that demonstrate a seizure or custody have occurred are the threatening presence of several officers, physical touching of the person, or use of a tone or language that might compel compliance with the request

of the police. *Baker.* In this case there is no evidence that any of these factors were present.

█ The circumstances in this case indicate that Lucas was not in custody as determined by the trial judge. The atmosphere for both questionings was identical. The same detective conducted the interrogation. There is nothing to suggest in either interview that coercive behavior on the part of law enforcement was present. The arrival at the police station was the same. The room was the same, the detective was the same. In both instances, Lucas volunteered to come for questioning and even initiated contact after the first interrogation seeking a status of any case against him. The questioning was approximately an hour in length and does not reflect any long or arduous process in which the resistance of the suspect was worn down.

It has been held that whether a person is in custody depends on the objective circumstances of the interrogation. *Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003). The subjective view of the officer and the person being questioned are not the focus of the question.

The second interview involved both questions about the allegations of the stepdaughter as well as the nephew. During the course of the interview, Lucas admitting to fondling the nephew and having the victim fondle him. At the conclusion of the second interview, Lucas was arrested for the misdemeanor charge of sexual abuse with regard to the stepdaughter. Almost two weeks later, Lucas was served with a juvenile summons on two charges of first-degree sexual abuse in connection with the incidents twenty years earlier concerning his nephew.

█ In order for the *Miranda* warning to apply, a defendant must be in custody.

*Callihan v. Commonwealth,* 142 S.W.3d 123, 127 (Ky.2004). Here, Lucas was not in custody during the second interview because he was not formally arrested at that time and voluntarily came to the police station for the questioning. It has been held that a policeman's unarticulated plan to take a defendant into custody has no bearing on the question of whether a subject was in custody at a particular time. The only relevant inquiry is how a reasonable person in the position of the suspect would have understood the situation. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

Certainly Lucas was not in custody during the first interrogation and also was not in custody during the second questioning. All the circumstances in the first interview were present when Lucas was questioned on the second occasion. The only significant difference as related to custody was that Lucas was told that a criminal complaint about the stepdaughter had been filed and that there were allegations made by a nephew. He was not told about the arrest warrant. Based on all the circumstances, a reasonable person in the position of the defendant would not have believed he was in custody.

The opinion of the Court of Appeals is reversed and the judgment of conviction is reinstated.

GRAVES, ROACH and SCOTT, JJ., concur.

COOPER, J., dissents by separate opinion and is joined by LAMBERT, C.J. and JOHNSTONE, J.

COOPER, Justice, dissenting.

Appellant's first interrogation by Detective Lanasa occurred on February 26, 2002, and pertained to a potential misdemeanor offense involving Appellant's inappropriate touching of his stepdaughter.

Appellant came to the police station voluntarily, and Detective Lanasa advised him of his *Miranda* rights. She also told him that he was free to leave at any time; and he did, in fact, leave at the conclusion of the interrogation. On February 27, 2002, Detective Lanasa filed a criminal complaint against Appellant charging him with the misdemeanor offense.

Subsequently, Lanasa received information that Appellant had sexually abused his nephew twenty years before, when Appellant was seventeen years old and the nephew was four years old. If so, that offense would be a felony. KRS 510.110(1)(b)(2). On March 1, 2002, Lanasa contacted Appellant and asked him to return to the station under the ruse of further questioning about the misdemeanor offense. Appellant again voluntarily came to the police station. This time, Lanasa did not advise Appellant of his *Miranda* rights and did not tell him that he was free to leave at any time. In fact, she had no intention of permitting him to leave, as she had in her possession a warrant of arrest for the misdemeanor charge which she intended to (and did) serve on Appellant at the conclusion of the interrogation. After rehashing the same information discussed during the February 26th interrogation, Lanasa shifted the focus of the interrogation to the felony allegation. Appellant first denied the allegation but ultimately confessed, and Lanasa placed him under arrest.

The Commonwealth did not assert at the trial level and the trial court did not find that the *Miranda* warnings given by Lanasa on February 26th were still effective for the March 1 interrogation. *See United States v. Hanton*, 418 F.Supp.2d 757, 764 (W.D.Pa.2006) (*Miranda* warnings given at hospital at 2:55 a.m. when Appellant was interrogated only about an alleged misdemeanor insufficient for subsequent interrogation about an alleged felony at state

police post four hours later); *Jones v. State*, 119 S.W.3d 766, 771–75 (Tex.Crim. App.2003) (en banc) (*Miranda* warnings given in interrogation about one offense insufficient to cure failure to give *Miranda* warnings prior to interrogation nine days later about different offenses). As noted in *Jones*, 119 S.W.3d at 774 n. 13, cases holding that the mere passage of time does not obviate previously-given *Miranda* warnings are all cases in which both interrogations concerned the same crime or the suspect stated prior to the second interrogation that he remembered his *Miranda* rights, or both. *E.g., Biddy v. Diamond*, 516 F.2d 118, 122 (5th Cir.1975); *United States v. Springer*, 460 F.2d 1344, 1352, (7th Cir.1972); *Maguire v. United States*, 396 F.2d 327, 330–31 (9th Cir.1968); *Gorman v. United States*, 380 F.2d 158, 164 (1st Cir.1967); *Johnson v. State*, 56 Ala. App. 583, 324 So.2d 298, 302 (1975); *State v. Gilreath*, 107 Ariz. 318, 487 P.2d 385, 386 (1971); *DeJesus v. State*, 655 A.2d 1180, 1195–96 (Del.1995); *People v. Hill*, 39 Ill.2d 125, 233 N.E.2d 367, 369 (1968); *Jackson v. State*, 268 Ind. 360, 375 N.E.2d 223, 225 (1978); *State v. Russell*, 261 N.W.2d 490, 492–93 (Iowa 1978); *State v. Brown*, 601 S.W.2d 311, 314 (Mo.Ct.App. 1980); *Koger v. State*, 117 Nev. 138, 17 P.3d 428, 431–33 (2001); *Ex parte Bagley*, 509 S.W.2d 332, 335 (Tex.Crim.App.1974); *State v. Blanchey*, 75 Wash.2d 926, 454 P.2d 841, 845 (1969); *Mitchell v. State*, 982 P.2d 717, 722 (Wyo.1999). The Commonwealth only argued and the trial court found that the March 1 confession was not the product of a "custodial interrogation."

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way.*" *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977) (emphasis added) (quoting *Miranda v. Ari-*

zona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). The test is objective rather than subjective, and the determination is based on the totality of the circumstances. *Id.* at 495, 97 S.Ct. at 714. It is not the unexpressed intent of the officer that is decisive but "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984) (roadside questioning of stopped motorist). "[G]iven those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave?" *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995) (footnote omitted).

In *United States v. Griffin,* 922 F.2d 1343 (8th Cir.1990), the United States Court of Appeals for the Eighth Circuit noted that "an accused's freedom to leave the scene, and the purpose, place, and length of an interrogation" are factors to be considered in making a determination of custody. *Id.* at 1348. The Court then listed the following indicia of custody:

(1) *whether the suspect was informed* at the time of questioning that the questioning was voluntary, *that the suspect was free to leave* or request the officers to do so, or that the suspect was not considered under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to answer questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere of the questioning was police dominated; or,

(6) *whether the suspect was placed under arrest at the termination of questioning.*

*Id.* at 1349 (emphasis added).

When interrogation occurs in an interrogation room at a police station, a presumption arises that the interrogation is custodial in nature. *State v. Clappes,* 117 Wis.2d 277, 344 N.W.2d 141, 147 (1984) ("Police station interrogation carries a strong presumption of custody...."). That inference can be overcome by showing, *e.g.,* that the defendant was informed that he was not under arrest, that he was free to leave at any time, and that he did, in fact, leave at the conclusion of the interrogation. In *Mathiason,* the interrogation was at the police station but the defendant was informed immediately upon arrival that he was not under arrest; and he left the police station without hindrance after his confession. 429 U.S. at 495, 97 S.Ct. at 714. *See also United States v. LeBrun,* 363 F.3d 715, 721–22 (8th Cir.2004) (interrogation at police station but defendant was told he was free to leave and was allowed to leave at the conclusion of the interview); *Callihan v. Commonwealth,* 142 S.W.3d 123, 124–26 (Ky.2004) (same). *Compare Commonwealth v. Magee,* 423 Mass. 381, 668 N.E.2d 339, 343 (1996) (custodial interrogation occurred when defendant was interviewed in closed room at police station, not told she could leave, and where questions focused on criminal involvement in the death of her son); *State v. Werner,* 9 S.W.3d 590, 596–97 (Mo.2000) (custodial interrogation occurred when defendant was isolated from friends and family and questioned by two officers who did not tell him that he was free to leave).

Although Appellant was not told that he was *not* free to leave the March 1 interrogation, Appellant had been told during the February 26 interrogation that he was free to leave, and that information was not

repeated during the March 1 interrogation. From that fact, a reasonable person would assume that the March 1 interrogation was different and that he was not free to leave. The fact that he was not permitted to leave at the conclusion of the interrogation is an indicia that he was, in fact, in custody. *Griffin,* 922 F.2d at 1349.

In *Reinert v. Larkins,* 379 F.3d 76 (3d Cir.2004), the defendant made incriminating statements in response to questioning by an emergency medical technician (EMT) and a police officer while being transported to the hospital in an ambulance. It was held that the statement to the EMT was not the product of a custodial interrogation even though the defendant was not told that he was free to leave, *id.* at 87, but that the statement in response to questioning by the officer was the product of a custodial interrogation because once the officer began questioning him, the defendant "had to know that he was a suspect being questioned by a police officer." *id.* Likewise, when Detective Lanasa ceased questioning Appellant about the misdemeanor allegation and changed the subject to a new felony allegation, Appellant had to know that he was a suspect being questioned by a police officer about that offense. The fact that he initially denied the allegation is another indication that he knew he was being interrogated about a criminal offense.

Under the totality of these circumstances, I conclude that Appellant's March 1, 2002, confession was the product of a custodial interrogation. Accordingly, I dissent.

LAMBERT, C.J.; and JOHNSTONE, J., join.