RENDERED: JUNE 9, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1381-MR

GORDON K. PERRY                                                          APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE THOMAS L. TRAVIS, JUDGE
ACTION NO. 20-CR-00751

COMMONWEALTH OF KENTUCKY                                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Gordon Perry appeals from the Fayette Circuit Court's Final

Judgment and Sentence entered November 17, 2021, upon Perry's *Alford*[1] plea,

subsequent to the circuit court's Order entered February 4, 2021, denying his

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

motion to suppress statements made to law enforcement prior to his arrest.[2]  We affirm.

In May 2020, Officer Greg George of the Lexington Police Department was investigating a report of terroristic threatening.  The report alleged threatening messages were made by Perry to another individual via photographs and text messages.  In one photograph, Perry was seen holding a gun to the camera.  There was a bed in the background of the photograph.  It was also alleged Perry was seen walking down the street with a handgun.  Officer George confirmed Perry was a convicted felon by calling the Kentucky Division of Probation and Parole and confirmed his address by searching the Kentucky CourtNet database.  He also confirmed Perry's address matched the address above the door in one of the photographs.

On or about May 24, 2020, Officer George went to Perry's residence to investigate the reports of terroristic threatening.  His body camera was on during the entire encounter.  Perry's roommate answered the door and stated he did not know if Perry was home, but invited Officer George and the officer assisting him

---

[2] Gordon K. Perry's motion to suppress does not appear in the record before us, nor does it appear that it was ever filed according to the official case history that appears at the beginning of the record.  However, at the start of the suppression hearing, the circuit court noted it had received a copy of the motion and had read it.  The Commonwealth also acknowledged it had received a copy of the motion during the course of the hearing.  We therefore treat the motion as preserved for the purpose of this appeal.

inside.  The roommate directed the officers down a hallway to Perry's bedroom.

Upon reaching the bedroom, Perry was seen lying on the bed.  After greeting

Perry, Officer George immediately asked him to sit on a chair in the room, stating

it would make him feel more comfortable than if Perry was on the bed.  Perry

moved to the chair.  Officer George asked Perry if he knew why they were there,

and Perry responded in the affirmative.  Officer George then asked, "What's going

on, man?"  At that point, Perry began to tell Officer George he had been "jumped"

by two individuals from work, which prompted him to acquire a gun because he

was scared.  Although difficult to understand all of what Perry stated in the body

camera footage, the parties do not dispute Perry admitted to possession of a gun,

which he eventually stated he gave back to his "partner."  He stated the gun in the

photograph was a fake gun, but he did have a real gun at some point.  After

allowing Perry to speak for several minutes, Officer George informed him that he

had just discovered there was a pending warrant for his arrest.  Perry was

eventually handcuffed and arrested on both the warrant and on the charge of being

a convicted felon in possession of a handgun, due to his admission in the presence

of the officers.  He was later indicted for terroristic threatening and possession of a

handgun by a convicted felon.

Thereafter, Perry moved to suppress the statements he made to Officer

George before being arrested.  The circuit court denied the motion.  Perry

subsequently entered a conditional guilty plea to terroristic threatening, third degree, and an amended charge of possession of a firearm by a convicted felon, whereupon he was sentenced to one year of imprisonment. This appeal followed.

On appeal, Perry argues: (1) he was in custody when questioned at his residence about the terroristic threatening report and was not read his rights before being questioned; (2) Officer George knew or should have known about the outstanding warrant prior to arriving at Perry's residence; and (3) the public safety exception is inapplicable in relation to Officer George's request for Perry to move from the bed to a chair. We will address each of these arguments.

To begin, our review of an order denying a motion to suppress evidence is pursuant to a two-prong test. *Commonwealth v. Mitchell*, 610 S.W.3d 263, 268 (Ky. 2020). Under the first prong of the test, we review the court's findings of fact under the clearly erroneous standard. *Id.* Under the second prong of the test, we review the court's application of law to the facts *de novo*.

Additionally, if it is disputed whether a defendant was in custody at the time of a police interrogation, the issue looks to a mixed question of law and fact, that is reviewed *de novo*. *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky. 2006).

As concerns Perry's first argument, law enforcement is required to provide warnings to a suspect pursuant to *Miranda v. Arizona*, 384 U.S. 436

-4-

(1966), only when that suspect is in custody.  The determination of whether a

suspect is in custody has been clarified by the Kentucky Supreme Court.  To wit:

> The inquiry for making a custodial determination is whether the person was under formal arrest or whether there was a restraint of his freedom or whether there was a restraint on freedom of movement to the degree associated with formal arrest.  *Thompson* [*v. Keohane*, 516 U.S. 99 (1995)]; *See also United States v. Mahan*, 190 F.3d 416 (6th Cir.1999).  Custody does not occur until police, by some form of physical force or show of authority, have restrained the liberty of an individual.  *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999).  The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave.  *Baker*, *supra*, *citing United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).  Some of the factors that demonstrate a seizure or custody have occurred are the threatening presence of several officers, physical touching of the person, or use of a tone or language that might compel compliance with the request of the police.  *Baker.*

*Lucas*, 195 S.W.3d at 405-06.

Further, "the initial determination of custody depends on the objective

circumstances of the interrogation, not on the subjective views harbored by either

the interrogating officers or the person being questioned."  *Stansbury v.

California*, 511 U.S. 318, 323 (1994).  "[T]he only relevant inquiry is how a

reasonable man in the suspect's position would have understood his situation."

*Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

We agree with the circuit court and the Commonwealth that Perry was not in custody at the time he confessed to possession of a handgun. Officer George did not go to Perry's residence to arrest him, only to follow-up on an investigation regarding terroristic threatening. Officer George was invited into the residence by Perry's roommate. Moreover, Perry simply began talking, without pause, upon the innocuous question posed by Officer George asking if Perry knew why officers were at his residence. At the suppression hearing, Officer George testified he believed Perry was speaking voluntarily as an excited utterance and, therefore, he did not interrupt him. We agree that statements made by Perry were voluntary. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda*, 384 U.S. at 478.

Further, Officer George permitted Perry to maintain possession of his cellular telephone and use it during the encounter. The body camera footage shows there was nothing threatening in Officer George's tone of voice or demeanor and there was no physical contact until the end of the encounter when Perry was placed in handcuffs. Accordingly, Perry's argument that he was in custody at the time he made the statements must fail.

For Perry's second argument, he submits that the police officers did know or should have known about his outstanding warrant from Jessamine County prior to arriving at his home, and thus planned to arrest him upon arriving at the

-6-

house.  The argument is unsupported by the record.  Officer George testified he did not know about the outstanding warrant until it was brought to his attention by another officer during the encounter with Perry.  He also explained in his testimony that the system used to check for warrants is separate from the tools he used to ascertain Perry's address and criminal history (CourtNet), and whether he was a convicted felon (contacting the Division of Probation and Parole).  He further stated he did not check for a warrant prior to going to Perry's house because he did not believe it was pertinent to the investigation of terroristic threatening.  There is nothing in the record that contradicts Officer George's testimony, other than Perry's bare assertion that he "should have known" about the warrant.  Perry's assertion that Officer George "was never able to give a definite answer" when asked about the warrant is not supported by the record.  Perry's Brief at 11.  We discern no error.

Turning to Perry's final argument regarding the inapplicability of the public safety exception to *Miranda*, 384 U.S. 436, the circuit court ruled that:

> Alternatively, if he had been considered to be in custody, the initial questioning of [Perry] likely fell within a public safety exception to *Miranda*.  Once in the bedroom where [Perry] was residing [Officer George] recognized it to be the same in the internet photos with the gun, thus some questioning was warranted due to identifiable and specific danger.

February 4, 2021, Order at 1-2.

Given that we are affirming the circuit court's ruling that Perry was not in custody during his initial questioning by Officer George, Perry's public safety exception argument is moot and otherwise not relevant to the disposition of this appeal. Accordingly, we will not address this hypothetical argument.

For the foregoing reasons, the Final Judgment and Sentence of the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Kayley Barnes
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christina L. Romano
Assistant Attorney General
Frankfort, Kentucky