# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: FEBRUARY 19, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0461-MR

DAVID LOUIS MCCAMPBELL                       APPELLANT

V.            ON APPEAL FROM GRAVES CIRCUIT COURT
HONORABLE TYLER L. GILL, SPECIAL JUDGE
NO. 23-CR-00074

COMMONWEALTH OF KENTUCKY                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This case is before the Court following the conviction of the Appellant, David McCampbell, for being a felon in possession of a handgun, first-degree possession of a controlled substance (methamphetamine), possession of drug paraphernalia, and being first-degree persistent felony offender. He was sentenced to twenty years in prison and now appeals as a matter of right. He makes only one substantive claim of error: that the trial court erred in refusing to grant his motion to suppress statements made to a police officer while at the scene of an accident; and, in doing so, failing to hold an evidentiary hearing. For the following reasons, we affirm the conviction and sentence.

## I.    Facts

January 22, 2023, was a night when Nature gave the residents of Graves County a gentle reminder of her wintry wrath; wet and rain, cold and sleet, snow and ice covered the ground and roads, only a token of her apathy to the works of men. One man, David McCampbell, chose to brave the squall, driving home from a party after dropping an unnamed female off at her home. Heading home, he lost control of his Chevy Tahoe on some ice and flipped the vehicle.

Sgt. Garrett Clark of the Graves County Sheriff's Department was the first to respond. He found McCampbell standing near the wreckage. McCampbell did not appear intoxicated and passed a Horizontal Gaze Nystagmus test.[1] Sgt. Clark testified McCampbell was uninjured, respectful, and compliant. When Sgt. Clark asked for his driver's license and proof of insurance, McCampbell produced the former but informed him the latter was in the glovebox of the vehicle. Sgt. Clark asked permission to search the entire vehicle which McCampbell granted. Sgt. Clark testified when he searched the glovebox, he did not recall finding a handgun.

During the search, Det. Snapper Seton arrived on the scene. Det. Seton was familiar with McCampbell, as he was involved in several cases for which McCampbell had gone to trial the previous year and won.[2] Det. Seton told

---

[1] *See Leatherman v. Commonwealth*, 357 S.W.3d 518, 527 n.4 (Ky. App. 2011) for a definition.

[2] The trial below was bifurcated due to the felon in possession of a handgun charge. McCampbell testified in the second portion but not the first, and part of his defense was that Det. Seton planted the gun in the glovebox.

McCampbell he could sit in the police cruiser to get out of the elements which he accepted. Det. Seton then joined Sgt. Clark at the Tahoe and took up the search inside the vehicle. He found a metal cylindrical vial attached to McCampbell's keys, which Det. Seton testified he recognized as something often containing drugs. He opened it and identified a substance as methamphetamine which laboratory tests later confirmed. Det. Seton gave the vial to Sgt. Clark. Det. Seton also found a 9 mm Ruger pistol in the glovebox. He relayed the find to Sgt. Clark and asked him to contact police dispatch to confirm whether McCampbell was a convicted felon. At this point, both men were outside the Tahoe. Dispatch confirmed. Det. Seton went back to the vehicle to collect the firearm while Sgt. Clark went to the cruiser.

Sgt. Clark asked McCampbell to step out. As he did so he asked McCampbell about the gun. Both the Commonwealth and McCampbell agree Sgt. Clark did not give *Miranda* warnings. Both also agree McCampbell's answer is difficult to hear from the body camera footage. McCampbell's brief represents that he acknowledged the presence of the gun "but seemingly alleged that he was holding it for someone else." The Commonwealth asserts McCampbell informed Sgt. Clark that someone else had left the gun in the car. At trial, McCampbell testified three persons had used his car while he was at a birthday party for approximately two hours. He had lent it to them for the purpose of going to the store, but that they had used the vehicle for much longer than anticipated. This sparked an argument which led to McCampbell leaving the party and subsequently crashing his vehicle.

3

Almost immediately after Sgt. Clark's question, Det. Seton approached McCampbell and administered *Miranda* warnings. He then asked about the gun. Det. Seton testified he was unaware Sgt. Clark had already asked about the gun. McCampbell answered that he did not know who the rightful owner of the gun was but denied ownership and that so far as he knew it was not stolen.[3] McCampbell was placed under arrest.

Trial was scheduled for July 9, 2024, a Tuesday. A pretrial order on April 26, 2024, told the parties to file any other motions before the final pretrial conference on June 12, 2024. On July 8, 2024, McCampbell filed a motion to suppress the statement made to Sgt. Clark as he did not give *Miranda* warnings prior to questioning. The motion was heard on the morning of trial. The trial court noted the lateness of the motion but heard arguments anyway.

McCampbell acknowledges in his brief the statement made to Sgt. Cark was "a major obstacle" to his defense that Det. Seton had planted the weapon. At trial, the Commonwealth argued the untimeliness of the motion[4] as well as McCampbell's statements pre- and post-*Miranda* warnings were substantively the same. Defense disputed this last assertion, arguing the first statement was more detailed. The trial court then asked if there was any dispute regarding custody. The Commonwealth argued McCampbell was not in custody because

---

[3] McCampbell would later testify he did not know the gun was in the glovebox despite his statements. When asked why he did not display any surprise at being informed a gun was in his car, he testified that he was not surprised by what corrupt police officers could do.

[4] As part of this argument, the Commonwealth told the trial court that if the motion to suppress were granted it would not want to proceed with trial.

he had voluntarily entered the police cruiser to get out of the weather and was not in handcuffs at the time of Sgt. Clark's question. The defense argued when McCampbell stepped out of the cruiser, Sgt. Clark used his body to "box" him in so that he was cornered between the vehicle and Sgt. Clark, and a reasonable person would not believe they were free to leave at that point in such a situation. The trial court did not view the body camera footage, did not hold an evidentiary hearing, and the arguments lasted approximately seven minutes. The trial court held McCampbell was not in custody and denied the motion to suppress.

On appeal, McCampbell argues, for purposes of determining custody, that he

> was not told at the time of the question that it was voluntary, or he was free to leave. McCampbell did not initiate the conversation. When McCampbell stood up from the cruiser, Sgt. Clark stepped in front of him and immediately asked him about the gun. No reasonable person would believe he could have decided to disengage from the officers and walk off.

Therefore, he was in custody. He also argues the trial court was required to hold an evidentiary hearing under RCr 8.27(2), which states, "[t]he court shall conduct a hearing on the record and before trial on issues raised by a motion to suppress evidence."

In response, the Commonwealth argues the motion was untimely as RCr 8.27(1) requires "[a] motion to suppress evidence shall be filed by the deadline set by the court pursuant to Rule 8.20 for the filing of such motion." That deadline, according to the Commonwealth, was the final pretrial conference on June 12, 2024. The Commonwealth also argues that if this Court is not

5

persuaded by the timeliness argument, the failure of the trial court to hold the required evidentiary hearing was harmless. For the Commonwealth, to accept McCampbell's argument regarding custody results in "nearly everyone who is asked to exit a vehicle during a traffic stop would be . . . in custody." Pointing to the several factors identified by the Supreme Court of the United States in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), the Commonwealth argues Sgt. Clark was the sole officer in McCampbell's presence at the time of the question; he did not threaten or use an intimidating tone of voice; he did not brandish a weapon; and he did not touch McCampbell.

Finally, the Commonwealth argues whether the pre- and post-*Miranda* statements are different is a red-herring. "Whether he gave more detail in the first statement or whether both statements were nearly identical is irrelevant to whether the first [statement] was obtained illegally while he was in custody. Therefore, this disagreement is not material and cannot elevate the trial court's failure to hold an evidentiary hearing above the level of harmless error."

## II.     Analysis

As to the timeliness of the motion to suppress, we are in agreement with the Commonwealth. Generally speaking, a motion to suppress evidence filed the day before trial is untimely. RCr 8.27(1) requires a timely motion and, specifically, a motion filed by the deadline set by the trial court. McCampbell concedes in his brief that deadline was June 12, 2024. But we are reluctant to decide this appeal on this issue for the simple fact that the trial court did not rule the motion untimely, which was its prerogative, but instead made a

6

substantive legal conclusion on the merits regarding custody. McCampbell has also pointed to the record where other motions were considered by the trial court that were filed after June 12, 2024. Therefore, in absence of a decision based on the timeliness of the motion at the trial court, we will consider the merits of its decision, and not rest on a procedural technicality. Nonetheless, we do not condone the motion practice of defense counsel, and our consideration of the merits should not be taken as an endorsement of such eleventh hour filings.

Because the trial court did not rule the motion to suppress was untimely, it was compelled to hold a suppression hearing. RCr. 8.27(2) makes this clear. This rule replaced the previous RCr. 9.78. Prior decisions interpreted the old rule such "that the trial court does not have discretion to dispense with the hearing." *Hunt v. Commonwealth*, 304 S.W.3d 15, 27 (Ky. 2009). The change to RCr 8.27 did not alter this requirement. Therefore, the trial court did err. "Nevertheless, failure to hold an evidentiary hearing on a motion to suppress is subject to harmless error review, even in a capital case." *Id.* Failure to hold an evidentiary hearing on a motion to suppress is harmless when "[t]here are no material or substantial facts in dispute surrounding the events occurring during the making of . . [the] confession." *Mills v. Commonwealth*, 996 S.W.2d 473, 481 (Ky. 1999), *overruled on other grounds by, Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010).

Our decision in *Mills* followed *Jackson v. Denno*, 378 U.S. 368, 391 (1964). We agree with the Commonwealth the dispute regarding the

substantive difference between McCampbell's pre- and post-*Miranda* statements is immaterial, as *Denno* is only concerned with "the facts concerning the circumstances surrounding the confession[.]" *Id.* When those facts are undisputed, a failure to hold an evidentiary hearing is harmless because the reviewing court is still in a position "to judge the voluntariness of the confession based upon the clearly established facts and in accordance with proper constitutional standards." *Id.*; *cf. Matlock v. Commonwealth*, 344 S.W.3d 138, 140 (Ky. App. 2011) (holding failure to conduct suppression hearing was not harmless as substantial difference between officer's and defendant's testimony existed regarding how drugs were found).

In this case, the only factual dispute in the circumstances surrounding McCampbell's statement is the number of officers present.[5] McCampbell says three were on the scene, while the Commonwealth says only two were present by the time Sgt. Clark asked about the gun. This is not a substantial or material fact because even accepting three officers were on the scene, there is no allegation by McCampbell that the third officer was in his immediate vicinity when Sgt. Clark asked his question. In other words, when Sgt. Clark asked about the gun, it was only he and McCampbell at the car. Additionally, the trial court told defense counsel, "I believe you are telling me accurately. I'm going to

---

[5] On appeal, McCampbell's appellate counsel represents there was a question of whether he was in handcuffs. How appellate counsel could objectively believe that is a legitimate issue is difficult to fathom. Not only did McCampbell's trial counsel agree he was not handcuffed but the body camera footage shows McCampbell moving his arms, even picking something up from the ground, which is impossible had he been handcuffed.

find there was not a custodial interrogation. It's gonna [sic] come in. Okay? I agree with your facts." Thus, even if there was a material or substantial factual dispute, the trial court resolved such dispute in favor of McCampbell when making his ruling.

The only question before the Court then is whether the trial court correctly determined McCampbell was not in custody. Since our application of the law to the facts is *de novo*, we cannot shirk our responsibility to answer the tough question by deference to the trial court. *Haney v. Commonwealth*, 653 S.W.3d 559, 564 (Ky. 2022).

> "*Miranda* warnings are due only when a suspect interrogated by the police is 'in custody.'" *Thompson v. Keohane*, 516 U.S. 99, 102, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "[W]hether a defendant is in custody is a mixed question of law and fact to be reviewed *de novo*." *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky. 2006). Custody occurs when an officer, by some means of physical force or show of authority, restrains the liberty of an individual. *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999).

*Id.*

> The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave. *Baker, supra,* citing *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Some of the factors that demonstrate a seizure or custody have occurred are the threatening presence of several officers, physical touching of the person, or use of a tone or language that might compel compliance with the request of the police.

*Id.* (quoting *Lucas*, 195 S.W.3d at 405-06).

McCampbell was essentially stranded by the road after crashing his vehicle. Police came to assist. After obtaining consent to search the vehicle, he voluntarily entered a police cruiser to escape the elements. When Sgt. Clark returned, he was asked to step out of the vehicle. When doing so, Sgt. Clark

9

was standing to the side a respectful distance away. Having viewed the body camera footage, we cannot agree with McCampbell that he was "boxed in" or wedged between Sgt. Clark and the police vehicle. Sgt. Clark then asked, "What's the deal with the gun in the glovebox?" In reply, McCampbell answered, "It was just left there the other night. Some guy got into it . . . ." At this point, McCampbell begins recounting the events leading up to the crash, that he was at a party and taking a woman home.

Sgt. Clark then detained McCampbell, performed a body search, and Det. Seton came over. He gave McCampbell the *Miranda* warnings. Det. Seton then declared, "David, we found a gun in your car." McCampbell replied, "Like I was saying some guys got into it the other night . . . ." at which point his words become inaudible due to a eighteen-wheeler driving by, and then the audio cuts out. We are not sure if this was a technical defect or intentional as some of the audio mentioning McCampbell's status as a felon had to be omitted given the bifurcated trial.

After review of the footage, we agree with the trial court that there was sufficient evidence to conclude McCampbell was not in custody when Sgt. Clark inquired about the gun. When a defendant does not have "any objective reason to believe that she was not free to end the conversation . . . and proceed on her way[,]" then there is no custodial interrogation. *Mendenhall,* 446 U.S. at 555. The Commonwealth has correctly pointed out that none of the *Mendenhall* factors are present: there was no "threatening presence of several officers," no "display of a weapon by an officer," no "physical touching of the person of the

10

citizen," and no "use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 554. McCampbell's lack of means to depart the scene was not the result of any police action, and therefore, cannot be imputed to the Commonwealth. This leaves only the question of whether the circumstances objectively conveyed to McCampbell that he was not free to answer Sgt. Clark's question.

This Court has identified several other factors to aid the custodial analysis and they, in their totality, support our conclusion.

> Other factors which have been used to determine custody for *Miranda* purposes include: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so, whether the suspect possessed unrestrained freedom of movement during questioning, and whether the suspect initiated contact with the police or voluntarily admitted the officers into the residence and acquiesced to their requests to answer some questions.

*Smith v. Commonwealth*, 312 S.W.3d 353, 358-59 (Ky. 2010) (quoting *United States v. Salvo,* 133 F.3d 943, 950 (6th Cir. 1998)).

Although Sgt. Clark initiated the questioning and its purpose was undoubtedly in pursuit of a criminal investigation and meant to elicit a statement which could be used against McCampbell in a prosecution, the length of the questioning was comparatively short—a matter of seconds. The overall situation was not hostile or coercive. We also conclude McCampbell possessed a sufficient degree of unrestrained movement to counsel against a finding of custody. He was not in handcuffs, he was not wedged in-between

11

Sgt. Clark and the police cruiser, and, therefore, he could have walked about the open area in front of him if he had chosen to do so. Under the totality of circumstances, we conclude the questioning did not occur in the kind of custodial environment that would have objectively signaled to McCampbell that he was not free to end the conversation and not answer Sgt. Clark's question.

Finally, and briefly, we address the issue of the "question-first" technique of interrogation, condemned by the Supreme Court of the United States in *Missouri v. Seibert*, 542 U.S. 600, 613 (2004). We have held *Seibert* is a plurality decision, and its application is only implicated in circumstances when police deliberately employ the "question-first" technique to get around *Miranda*. *Callihan v. Commonwealth*, 142 S.W.3d 123, 125-26 (Ky. 2004). McCampbell argues that there can be no proper conclusion regarding the improper use of the "question-first" technique without an evidentiary hearing therefore, remand is necessary. *Id.* at 126.

We disagree. In *Hunt*, despite the lack of an evidentiary hearing, we held "the subsequent trial testimony" made clear the factual background thus, the failure to hold the evidentiary could be held harmless. *Hunt*, 304 S.W.3d at 27. In this case, Det. Seton testified at trial he was unaware Sgt. Clark had asked about the gun prior to his own questioning. There is no other evidence in the record to suggest the police improperly employed an unconstitutional method of interrogation. In light of Det. Seton's testimony, we conclude McCampbell's argument is speculative at best, and that is not enough for reversal.

12

### III. Conclusion

For the aforementioned reasons, we conclude the trial court erred in its failure to hold an evidentiary hearing but the error was harmless. There was no error in its determination that McCampbell was not in custody for purposes of *Miranda* when Sgt. Clark asked about the gun. McCampbell's convictions and sentence are affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Shannon Dupree
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General