Rodney Douglas BECKHAM, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2006–SC–000136–MR.

Supreme Court of Kentucky.

March 20, 2008.

As Modified June 5, 2008.

548

Susan Jackson Balliet, Assistant Public Advocate, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Clint Evans Watson, Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

A circuit court jury convicted Rodney Douglas Beckham of murder and of being a first-degree persistent felony offender (PFO1). The trial court sentenced Beckham to life imprisonment. He appeals to this Court as a matter of right,[1] raising two issues. First, Beckham contends that the trial court erred by denying his motion to suppress incriminating statements he made to police during a lengthy interrogation process that preceded *Miranda*[2] warnings. Second, he contends that the trial court violated his Sixth Amendment right to counsel by prohibiting him from discussing his testimony with his attorneys during an overnight recess that interrupted his cross-examination by the Commonwealth. We reject both arguments and, thus, affirm.

## I. *FACTUAL AND PROCEDURAL HISTORY.*

The cleaning crew at an Econo Lodge discovered a badly beaten woman in a room at the motel. The ensuing investigation eventually targeted Beckham because he was the last person seen with the victim. Before locating Beckham, the officers obtained a search warrant granting authority to take samples of blood, saliva, body hair, head hair, and pubic hair from Beckham[3] and to take nude photographs of him.

About an hour after the search warrant issued, the police located Beckham at his cousin's home in a neighboring county. Then, at around 4:30 p.m., two officers went to the door to ask Beckham if he would speak with them while three other officers were nearby.[4] Beckham apparently agreed to speak to the officers, and the officers transported him in a police vehicle to a local probation and parole office.

The two lead investigators, Boone County Sheriff's Department Detectives Pate and Lavender, met Beckham at the probation and parole office. Detectives Pate and Lavender questioned Beckham for about two hours in an office behind a closed door. Beckham then agreed to make a written statement, at which time, Detectives Pate and Lavender left Beckham alone for the length of time it took him to write out his statement.

At the suppression hearing, it was established that Beckham took approximately thirty minutes to complete his written statement, which Beckham signed at 7:07 p.m. In that statement, Beckham admitted to being with the victim in the hours before she was discovered at the Econo Lodge. He further admitted in his statement that his effort to have sexual intercourse with the victim was unsuccessful because of his inability to achieve an erection. Beckham also wrote that at the vic-

---

1. *See* Ky. Const. § 110(2)(b).

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The affidavit for a search warrant deemed this type of information to be a "male perk kit . . . ."

4. Because none of the officers who initially encountered Beckham testified at the suppression hearing, it was not clear whether the three officers who did not go to the door were visible to Beckham at the time he agreed to speak to the authorities.

tim's request, he went to a grocery store and bought some items to be used to smoke cocaine. Beckham wrote that his encounter with the victim ended shortly before dawn when she let him out of her vehicle and drove away.

At 7:30 p.m., shortly after he signed his written statement, Beckham gave the police permission to retrieve the clothes he claimed he was wearing when he was with the victim. Beckham was then driven back to his cousin's home in a police vehicle to get the clothes. Beckham was returned to the probation and parole office, where, at around 8:00 p.m., the police taped a thirty-minute interview with Beckham. At that time, they informed him for the first time that they had the search warrant. The police then took Beckham to the hospital so the "perk kit" could be obtained. There is no indication that Beckham objected to going to the hospital or to the process required to obtain the evidence specified in the search warrant.

While Beckham was at the hospital, Detective Pate learned that another officer had found a bloodstained shirt in the trash at the home where Beckham was staying.[5] Apparently, the officers had also viewed the surveillance video from the grocery store Beckham mentioned in his written statement and had determined that the clothes he claimed he was wearing did not match those shown on the surveillance tape. After the perk kit evidence was obtained at the hospital, Beckham agreed to return to submit to further questions, at which time, he was taken to the local police department.

Around 11:00 p.m., the police told Beckham that there had been a "dramatic turn of events" or a "dramatic discovery" and asked him if he had anything he needed to say to them. Beckham then said something about needing help, after which the police first read him his *Miranda* rights. After Detective Lavender informed Beckham of his rights, Beckham exercised his right to counsel, thereby ending the interrogation at 11:16 p.m., nearly seven hours after the police first encountered Beckham at his cousin's house.

The victim died several weeks later, and Beckham was indicted for one count of murder. He filed a motion to suppress all statements he made to the police and all evidence seized as a result of those statements. After a hearing, the trial court denied the motion to suppress. The charge against Beckham proceeded to trial, after which the jury found Beckham guilty of murder and of being a PFO1. In accordance with the jury's recommendation, the trial court sentenced Beckham to life imprisonment. This appeal followed.

## II. ANALYSIS.

### A. Denial of Motion to Suppress.

■ Under the familiar dictates of *Miranda*, the authorities must inform a person to whom they are speaking of certain constitutional rights, including the interviewee's right to counsel, provided that the interviewee "has been taken into custody or otherwise deprived of his freedom of action in any significant way."[6] So the crucial question to be determined in situations where a criminal defendant contends that the authorities failed to comply timely with the warnings required by *Miranda* is whether the defendant was "in custody."[7]

---

5. There is no indication that the officers did not have permission from someone at the home where Beckham was staying to search the trash.

6. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602.

7. *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky.2006).

■ In order to determine if a person was in custody, a court must determine "whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave."[8] A reviewing court must be careful to use an objective standard in determining whether a person was in custody because "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."[9]

■ Beckham argues that his statements must be suppressed because the officers did not timely administer the *Miranda* warnings to him. Based on the standards we have already discussed, our task is to determine if the trial court correctly found that Beckham was not in custody when he spoke to the authorities. In making that determination, we must objectively assess the entire circumstances surrounding Beckham's interaction with the authorities to determine whether a reasonable person in Beckham's situation would have believed he was free to leave. The factual findings made by the trial court on this issue are conclusive if they are supported by substantial evidence.[10] But the determination of whether a defendant is in custody is a mixed question of law and fact, meaning that we review de novo the trial court's ultimate decision on that point.[11]

■ Beckham argues that the fact that he interacted with the authorities for over six hours before being informed of his *Miranda* rights shows that he was "in custody" for *Miranda* purposes. And we agree that the length of the interrogation is a factor that a court may take into account in determining whether a person was in custody.[12] But the length of Beckham's interaction with the police is not the only factor to be considered. At the suppression hearing, the officers testified that Beckham was told that he was free to go and, furthermore, that Beckham never gave an indication that his cooperation was anything other than voluntary. Additionally, there is no indication that the officers touched Beckham or engaged in any other physically coercive act during their interviews with him.[13]

■ Beckham also contends that the trial court misjudged the situation entirely because it mistakenly found that a probation and parole officer who knew Beckham went to his home and asked him to come to the probation and parole office. It is undeniable that the trial court made such a written finding in its order denying Beckham's motion to suppress. And it is further undeniable that evidence adduced at the suppression hearing does not support that finding. But it does not follow that this mistaken finding of fact destroyed the foundation for the trial court's ultimate conclusion regarding whether Beckham was in custody since there is no indication that Beckham did not voluntarily accompany the officers to the probation and parole office from his cousin's home.

8. *Id.*

9. *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

10. *Lucas,* 195 S.W.3d at 405.

11. *Id.*

12. *See, e.g., United States v. Crossley,* 224 F.3d 847, 861 (6th Cir.2000) (listing factors, including length of interrogation, which a court may consider in determining whether person was in custody).

13. *See Lucas,* 195 S.W.3d at 405–06 (holding that factors indicating whether a person is in custody includes physical touching by officers).

Despite Beckham's argument, we find it unnecessary to remand this case for additional findings by the trial court due to this lone, clearly erroneous finding of fact. Beckham declined the trial court's invitation to supplement the testimony given at the suppression hearing; and, more importantly, Beckham has not shown where he asked the trial court to make additional findings.[14] Furthermore, Beckham has not shown the necessity or efficacy of a remand for an additional suppression hearing or additional findings by the trial court.

■ We also reject Beckham's contention that he is entitled to a new suppression hearing under the dictates of *Procunier v. Atchley*,[15] *Procunier* held that a defendant may be entitled to a new suppression hearing if (1) he can demonstrate shortcomings in the procedures used to determine the voluntariness of his confession and (2) he has alleged facts which, if true, would establish that his confession was involuntary.[16]

*Procunier* is inapplicable to the case at hand. First, *Procunier* was a habeas corpus post-conviction case and not a direct appeal. Second, *Procunier* focused on whether a confession a defendant gave to an insurance salesman was improperly obtained and admitted into evidence.[17] Obviously, the issue in this case is vastly different in that Beckham complains about his interactions with the authorities, not a third party such as an insurance salesman. Third, the defendant in *Procunier* confessed to committing the crime, yet Beckham did not. Finally, even assuming—solely for the purposes of argument—that Beckham has identified shortcomings in the suppression hearing, he has not shown anything that would cause us to find that his interaction with the officers was custodial, not voluntary.

■ Finally, we reject Beckham's argument that he had to have been in custody because the authorities already held a warrant for a perk kit and photographs at the time they questioned him, meaning that the officers likely would not have simply let him leave. But this argument is unavailing. As mentioned before, the subjective intent of the officers is irrelevant in determining whether a person was in custody.[18] So the question of whether the officers would have forcibly detained Beckham so that the DNA evidence could be obtained is of no constitutional significance. The existence of the search warrant would only have constitutional import if the officers had let Beckham know about the warrant before speaking with him, which they apparently did not.[19] The question is whether a reasonable person in Beckham's situation would have believed that he was not free to leave. Beckham apparently did not know about the search warrant for the first several hours of his interaction with the police; thus, the exis-

14. Likewise, we reject Beckham's contention that we should rely heavily upon evidence presented at trial in reviewing the propriety of the trial court's denial of the motion to suppress. If Beckham wanted to proffer more evidence to support of his motion to suppress, he should have accepted the trial court's unequivocal invitation to present whatever evidence he believed was necessary.

15. 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971).

16. *Id.* 400 U.S. at 451, 91 S.Ct. 485.

17. *See id.* 400 U.S. at 447, 91 S.Ct. 485.

18. *Stansbury*, 511 U.S. at 323, 114 S.Ct. 1526; *Lucas*, 195 S.W.3d at 406.

19. *See Stansbury*, 511 U.S. at 325, 114 S.Ct. 1526 (stating that officer's views and beliefs as to likelihood of guilt are only relevant in initial custody determination if disclosed to defendant).

tence of the warrant does not defeat a finding that Beckham was not in custody.[20]

■ This case presents some factors suggesting that Beckham was in custody, primarily the length of the interrogation and the presence of multiple officers. But the weight of the evidence tends to show that Beckham was not in custody. Specifically, the officers testified that they informed Beckham he was free to leave and that Beckham never showed any inclination to leave or otherwise to stop speaking and cooperating with them. And Beckham offered nothing at the suppression hearing to rebut the officers' testimony. So, on balance, we conclude that the trial court correctly determined that Beckham was not in custody.

B. *Alleged Denial of Right to Counsel.*

■ Beckham testified in his own behalf at trial. During Beckham's cross-examination by the Commonwealth, the trial recessed for an overnight break. The next morning, the attorneys and the trial court discussed jury instructions before the cross-examination resumed. As the discussion between the court and counsel ended, Beckham's attorneys asked permission to speak with Beckham regarding jury instructions and other matters. The trial court granted permission for Beckham's attorneys to speak to him but admonished the attorneys not to talk with Beckham about his testimony. Defense counsel objected to the limitation on their right to confer with their client. The trial court responded by stating that it was not trying to limit Beckham's access to counsel

but, rather, was just trying to treat Beckham like any other witness. A short time later, the trial resumed; and Beckham was cross-examined further by the Commonwealth. Beckham now contends that the trial court's limitation on his consultation with his attorneys violated his Sixth Amendment right to counsel. We disagree.

In separate decisions, the United States Supreme Court has held that a court cannot prevent a criminal defendant from having any consultation with his attorney during an overnight recess[21] but that it is constitutionally permissible for a trial court to bar a testifying defendant from consulting with his attorney during a briefer recess.[22] The Court reconciled those two holdings by noting that an attorney would normally consult with his client about matters other than the client's testimony during an overnight recess but that it "presume[d] that nothing but the [defendant's] testimony will be discussed" during a brief recess.[23] Beckham contends that the trial court's act of barring his counsel from discussing his ongoing testimony is reversible error under *Geders.*

We reject Beckham's argument because *Geders* involved a trial court's complete denial of a defendant's right to consult with his attorneys during an overnight recess. By contrast, the case at hand involves a trial court's permitting the defendant to have contact with his attorneys during an overnight recess while limiting that contact by telling the attorneys to not discuss their client's ongoing testimony.

**20.** Indeed, it has been held that "[e]ven when probable cause exists to arrest a suspect, *Miranda* rights do not necessarily attach." *United States v. Ozuna,* 170 F.3d 654, 658 (6th Cir.1999).

**21.** *Geders v. United States,* 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

**22.** *Perry v. Leeke,* 488 U.S. 272, 283–84, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989).

**23.** *Id.* at 488 U.S. 284, 109 S.Ct. 594.

So the situation in the case before us is different from the blanket prohibition on attorney-client contact condemned in *Geders*. As the Court held in *Perry*, "we do not believe the defendant has a constitutional right to discuss [his] testimony while it is in process."[24] All the trial judge did in the case at hand was attempt to minimize the risk that Beckham would get "coaching tips" before the resumption of his cross-examination. Since the trial judge's actions attempted to protect the integrity of the proceedings and did not impermissibly limit all attorney-client contact during the waning minutes of the overnight recess, we hold that the trial court's admonition to counsel did not abridge Beckham's Sixth Amendment right to counsel.

### III. *CONCLUSION.*

Rodney Douglas Beckham's conviction and sentence are affirmed.

All sitting. LAMBERT, C.J.; ABRAMSON, and CUNNINGHAM, JJ., concur. NOBLE, J., concurs in part and dissents in part by separate opinion in which SCHRODER and SCOTT, JJ., join.

Opinion by Justice NOBLE concurring in part and dissenting in part.

I concur with the majority's holding that the trial court did not abuse its discretion in denying the Appellant's motion to suppress based on his claim that his statements to the police were not voluntary. However, because I believe the majority overstates and unduly expands the holding in *Perry v. Leeke*, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), and its application to the facts of this case, I dissent on the right to counsel issue.

The facts are straightforward and undisputed. Late in the sixth day of trial, the Commonwealth began its cross-examination of Appellant. Before the cross-examination finished, the trial court recessed for the night. Before commencing trial the next day, the court and counsel conferred regarding jury instructions. Defense counsel then asked to be allowed to consult with their client regarding jury instructions. The trial court agreed, but specifically ordered the attorneys not to "talk with him regarding testimony." Defense counsel objected on the basis that Appellant had the right to have counsel answer his questions. The trial court continued its limitation, stating that it was treating the Appellant "like any other witness."

The heart of this issue deals with a popular but legally unsubstantiated belief that it is unethical for an attorney to consult with his or her client on recesses during the defendant's testimony. The trend is for trial courts to disallow contact because the client may be "coached" on how his testimony should continue or on what not to say. This swallows whole the unfounded presumption that an attorney will tell his or her client to lie or present some form of fraudulent testimony, which is all that is prohibited by the Supreme Court rules on the practice of law. These rules make it very clear to any attorney that he or she must "so defend the proceeding as to require that every element of the case be established," SCR 3.130–3.1, but that he or she must not "[o]ffer evidence that the lawyer knows to be false," SCR 3.130–3.3(3), "[k]nowingly or intentionally falsify evidence, *counsel or assist a witness to testify falsely*," SCR 3.130–3.4(b) (emphasis added), or "[k]nowingly or intentionally disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." SCR 3.130–3.4(c).

24. *Id.*

These prohibitions are so entrenched in all ethical teachings as to be bedrock information. No person who passes the bar exam and makes it through character and fitness can be ignorant of them. Consequently, to presume by default that an attorney would first choose this prohibited conduct demonstrates a lack of faith in counsel that is unwarranted, given the grave consequences that follow such conduct, including possibly being disbarred.

The very nature of representing a client is to provide "counsel," and when an attorney is not allowed to do so, a defendant has been unquestionably denied his or her Sixth Amendment right to counsel.

Nonetheless, this issue has been the subject of federal review, and to a limited degree, state appellate review. The seminal case on this subject, *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), first began by considering the trial court's powers to sequester witnesses before, during, and after their testimony. Holding that the trial court did have such authority, the Supreme Court stated that the purpose was twofold: to restrain witnesses from "tailoring" their testimony to that of earlier witnesses and in "detecting testimony that is less than candid." The Court further noted that sequestration prevented "improper attempts" to influence testimony. In *Geders*, the Supreme Court ruled, "Applied to nonparty witnesses who were present to give evidence, the orders were within sound judicial discretion and are not challenged here."

However, when a party, here the Appellant, is involved, the analysis is different. The Supreme Court stated that a defendant is not "just like any other witness," as the trial court stated in this case:

But the petitioner was not simply a witness; he was also the defendant. A sequestration order affects a defendant in quite a different way from the way it affects a nonparty witness who presumably has no stake in the outcome of the trial. A nonparty witness ordinarily has little, other than his own testimony, to discuss with trial counsel; a defendant in a criminal case must often consult with his attorney during the trial. Moreover, "the rule" accomplishes less when it is applied to the defendant rather than a nonparty witness, because the defendant as a matter of right can be and usually is present for all testimony and has the opportunity to discuss his testimony with his attorney up to the time he takes the witness stand.

*Id.* at 88, 96 S.Ct. at 1335.

Going on to discuss the specific scenario involved, the Supreme Court noted that many recesses had been called during the ten-day trial, but that the one in question was an overnight recess, 17 hours long. Explaining how such recesses are used by counsel, the Court stated:

It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance.

... "He requires the guiding hand of counsel at every step in the proceedings against him."

*Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 77, 53 S.Ct. 55, 67, 77 L.Ed. 158 (1932)).

Considering the concerns of "coaching" or improper influence on testimony, the Court pointed out that there are other ways of dealing with the problem that are less restrictive than denying access to counsel. First, the Court noted that prosecutors, through skillful examination, could establish that defense counsel in fact coached the witness, and thus could attack the defendant's credibility in closing argument. Then, as to the trial court, the Court pointed out that the judge could order testimony to continue without interruption, and where that was not feasible, some solution short of cutting off communication between client and counsel could be devised. The Court disfavored any kind of "sustained barrier" between counsel and client, and settled the priorities:

> To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel.
>
> ... We hold that an order preventing petitioner from consulting his counsel "about anything" during a 17 hour overnight recess between his direct and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment.

*Id.* at 91, 96 S.Ct. at 1337 (citation omitted).

It is illogical to say that a defendant can consult with his or her attorney "about anything" on an overnight recess during his or her testimony, but not at any other time. Nonetheless, in a result-oriented case, *Perry v. Leeke*, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), the Supreme Court, with three Justices dissenting, opined that a "short" versus a "long" recess could properly be used to restrict a defendant's access to counsel, despite language in *Geders* that the Sixth Amendment forbids "any order barring communication between a defendant and his attorney, at least where that communication would not interfere with the orderly and expeditious progress of the trial." *Geders*, 425 U.S. at 92, 96 S.Ct. at 1337 (Marshall, J., concurring). As the dissent in *Perry* noted, this was also despite the fact that "*every* Court of Appeals to consider this issue since *Geders* ... has concluded that a bar on attorney-defendant contact, even during a brief recess is impermissible if objected to by counsel." 488 U.S. at 285–86, 109 S.Ct. at 602–03 (Marshall, J., dissenting).

Focusing on the trial court's ability "to decide, after listening to the direct examination of any witness, whether the defendant or a nondefendant, is more likely to elicit truthful responses if it goes forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer," *id.* at 282, 109 S.Ct. at 601, the Supreme Court majority held that the trial judge must have the power "to maintain the status quo during a brief recess in which there is a virtual certainty that any conversation between the witness and the lawyer would relate to the ongoing testimony." *Id.* at 283–84, 109 S.Ct. at 601. However, the Court also acknowledged that the major distinction was time, when it agreed that a defendant had the right to unrestricted access to advice from his lawyer during a long recess, and noted that such discussions would inevitably include some consideration of the defendant's ongoing testimony. "But in a short

recess *in which it is appropriate to pre-sume* that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice." *Id.* at 284, 109 S.Ct. at 602 (emphasis added).

It is difficult to conceive that *time,* the length of a recess, changes any of the reasons a defendant needs to consult with counsel. Fortunately, the Supreme Court, perhaps recognizing its weak distinction, also gave a disclaimer of sorts:

Our conclusion does not mean that trial judges *must* forbid consultation between a defendant and his counsel during such brief recesses. As a matter of discretion in individual cases, or of practice for individual trial judges, or indeed, *as a matter of law in some States,* it may well be appropriate to permit such consultation. We merely hold that the Federal Constitution does not compel every trial judge to allow the defendant to consult with his lawyer while his testimony is in progress if the judge decides that there is a good reason to interrupt the trial for a few minutes.

*Id.* at 284–84, 109 S.Ct. at 602 (footnote omitted, emphasis added).

Clearly the Court meant to give trial courts and the States broad discretion in deciding when to restrict contact in brief recesses, not to establish a prohibition of such contact. Indeed, *Perry* does not purport to overrule *Geders,* but merely to distinguish it. As the Supreme Court recognized in *Perry,* the States have the power to establish, as a matter of law, how such contact during brief recesses should be treated.

Unless our courts are prepared to presume that an attorney would always try to assist his or her client in presenting *false* testimony or to tailor testimony regardless of the truth, this State should recognize the clear rule about attorney-client access laid out in *Geders.* Given the serious consequences to an attorney who is caught committing such egregious ethical violations, such a presumption does not have a firm basis in reality. It is almost axiomatic that the last person an attorney should rely on to defend his unethical behavior is a defendant who may be able to use that information to better him or herself.

There has been no opportunity to address this issue since the Supreme Court ruling in *Perry,* but the issue was raised prior in a Kentucky case, *Moore v. Commonwealth,* 771 S.W.2d 34 (1988), *overruled in part on other grounds by McGuire v. Commonwealth,* 885 S.W.2d 931, 934–35 (Ky.1994). In considering this issue, this Court held, in accordance with the Fourth Circuit's ruling in the *Perry* case, that restricting contact over a lunch break was not prejudicial. Focusing on whether the defendant could show that the restriction was prejudicial, this Court opined that the burden was properly placed on him to establish the prejudice. The Court did not actually analyze the issue as a right to counsel question, but rather determined that there was no prejudice, and if there were error, that it was harmless. In a strongly worded dissent, Chief Justice Stephens noted two problems with this approach:

First, the distinction between instances in which prejudice can be presumed and when it cannot is subject to the arbitrariness inherent in I-know-it-when-I-see-it standards of measurement. Second, and more importantly, the inquiry into prejudice mandated in many cases where prejudice would not be presumed threatens to violate the privilege of attorney-client confidentiality.

*Id.* at 42 (Stephens, C.J., dissenting).

This Court has recently considered a related side of this question in *Brown v.*

*Commonwealth,* 226 S.W.3d 74 (Ky.2007). There, we held that when defense counsel left the courtroom during defendant's testimony which the attorney believed to be perjured, and did not make closing argument in the guilt phase, but returned to represent the defendant during the penalty phase, he left his client without representation of counsel at a crucial point of the trial. Noting the difficult ethical problems an attorney faces when he or she believes the client is about to commit perjury or testify against counsel's advice, we nonetheless found that the absence of his attorney during his testimony violated the defendant's Sixth Amendment right to counsel for the parts of his testimony that were not in dispute and for legal objections during cross examination and closing. If the defendant has a right to counsel under those circumstances, surely he or she has a right to access to counsel during a recess.

Our Bill of Rights provides that an accused has the right to be heard "by himself *and counsel.*" Ky. Const. § 11 (emphasis added). The right to be heard has been historically defined as the right to receive guidance from counsel, as well as having counsel speak. Further, our law is replete with the principle that the right to counsel attaches "at every stage of his trial—from its beginning to its end." *Powell v. Commonwealth,* 346 S.W.2d 731, 734 (Ky.1961). As the then Court of Appeals pointed out, the right to counsel throughout the trial is cherished because it is one of the most important safeguards ensuring that a trial is fair. Due process of law under the Fourteenth Amendment to the United States Constitution requires this. Part of the recognition of the primacy of this right is that an accused requires aid in coping with legal problems and assistance in meeting his or her adversary. At trial, an accused is confronted with the intricacies of law and the professional legal skill of the prosecutor. "The accused's

right to the 'Assistance of Counsel' has meant just that, namely, the right of the accused to have counsel acting as his assistant." *United States v. Ash,* 413 U.S. 300, 312, 93 S.Ct. 2568, 2575, 37 L.Ed.2d 619 (1973). Assistance can be no more pertinent than during a defendant's own testimony.

As Justice Sutherland wrote in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932),

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Id.* at 69, 53 S.Ct. at 64.

To leave a defendant to fend for himself at any critical part of the trial, is to only partially allow assistance of counsel. It could well be that it is that moment when ethical advice would make a significant difference in telling the truth rather than a confused incorrect statement made in response to skillful questioning. The defendant's very liberty is on the line, and while it should not be preserved with lies, neither should it be lost because he or she misunderstands a question or lacks legal knowledge to his or her detriment, when

counsel could assist. As the United States Supreme Court said in *Geders,* when a prosecutor's fear of possible improper coaching is weighed against a defendant's right to assistance of counsel, that right must prevail.

In this case, at the end of an overnight recess, counsel and the trial court discussed the instructions to be given. Counsel wished to discuss this with their client before the trial resumed. It is reasonable to assume that knowing the exact form of the instructions to be given was information that the Appellant needed to know, and that might reasonably affect the strategy of *how* he presented his testimony, not the falsity thereof.

Even if this is a question of discretion of the trial court as set forth in Perry, discretion must be exercised.

The trial court erred by viewing the Appellant the same as "any other witness." There was no evidence to indicate that counsel wished to "coach" their client. In fact, counsel stated only that they wanted to discuss instructions and that they should be able to *answer their client's questions.* The trial court gave no reasons for its decision to restrict access and thus actually exercised no discretion but instead acted arbitrarily. Because this decision came at the end of a long recess before the trial started for the day, and because there was obvious legitimate material to be discussed with Appellant, I believe the trial court abused its discretion under *Perry* and *Geders.*

Because I believe that the right to counsel is sacrosanct and that the majority has overextended *Perry,* I therefore respectfully dissent on that issue.

SCHRODER and SCOTT, JJ., join.