**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0141n.06

No. 10-6343

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Feb 08, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RODNEY DOUGLAS BECKHAM, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| COOKIE CREWS, Warden, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE:  ROGERS and STRANCH, Circuit Judges, and PEARSON, District Judge.[*]

ROGERS, Circuit Judge.  Rodney Douglas Beckham was convicted in Kentucky state court of murder and being a persistent felony offender and was sentenced to life imprisonment. Beckham appealed directly to the Kentucky Supreme Court, arguing, among other things, that the trial judge violated his Sixth Amendment right to counsel by prohibiting him from discussing his ongoing testimony with his attorneys during a brief 20-minute period.  The Kentucky Supreme Court, however, rejected this argument.  Beckham then filed a habeas petition, reasserting his Sixth Amendment claim, but the district court denied Beckham relief.  Beckham now appeals, arguing that the Kentucky Supreme Court's adjudication of his Sixth Amendment claim involved an unreasonable application of clearly established federal law as stated by the United States Supreme Court in *Geders v. United States*, 425 U.S. 80 (1976), and *Perry v. Leeke*, 488 U.S. 272

---

[*]The Honorable Benita Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

(1989). Beckham however is not entitled to habeas relief because the Kentucky Supreme Court's application of *Geders* and *Perry* to the facts of this case was not objectively unreasonable.

In June 2004, the cleaning staff at an Econo Lodge found a badly beaten woman in a room at the motel. The woman eventually died from her injuries. After an extensive police investigation, a grand jury in Boone County, Kentucky indicted Beckham, charging him with one count of murder and one count of being a first-degree persistent felony offender.

On November 29, 2005, a multi-day jury trial began during which Beckham testified in his own defense. On December 6, 2005, at approximately 4:35 p.m., while the state was cross-examining Beckham, the trial judge adjourned court for an overnight recess and told Beckham: "you cannot speak to your attorneys or anyone about this case overnight." Resp. App'x at 14.[1] Beckham agreed and neither he nor his attorneys objected to the judge's order.

At approximately 8:26 a.m. the next morning, after the judge had taken the bench but before cross-examination resumed, the judge met with the attorneys for both sides to discuss jury instructions, including whether to instruct the jury on lesser-included offenses. *Id.* at 17. Beckham's attorneys asked for permission to consult with Beckham "about these items, and . . . about other things." *Id.* at 22. The judge granted this request but admonished the attorneys not to talk to Beckham "about his testimony in this case, because the Commonwealth has the opportunity to cross-examine him without being coached by his counsel." *Id.* at 23. The judge

---

[1] Although there is some dispute between the parties over whose transcripts are properly before this court, Beckham does not challenge the accuracy of the transcript provided by the Warden. Moreover, any differences between the parties' transcripts are immaterial for purposes of this appeal.

explained that "[t]he idea is that . . . the testimony comes from the person and not from their counsel." *Id.* at 24. Beckham's attorneys objected to the judge's instruction, saying "if [Beckham] asks us questions about his testimony or things, I think that we should be able to answer his questions. And it goes to the right to counsel . . . . I would object that . . . we shouldn't be limited in any way to talk to our client." *Id.* The judge responded that he was not trying to limit Beckham's right to counsel; rather, he was treating Beckham like every other witness. *Id.* at 24-25. The judge then adjourned court at approximately 8:44 a.m. and, for approximately 20 minutes, Beckham was permitted to consult with his attorneys about matters other than his ongoing testimony. *Id.* at 17, 33. The judge then resumed the trial at approximately 9:04 a.m. and the state finished cross-examining Beckham. *Id.* at 34.

The jury eventually found Beckham guilty of murder and being a persistent felony offender. In accordance with the jury's recommendation, the judge sentenced Beckham to life imprisonment.

Beckham appealed his case directly to the Kentucky Supreme Court and argued, among other things, that the trial judge violated his Sixth Amendment right to counsel. R. 9-8, Page ID # 192-96. Although the judge issued two orders regarding Beckham's ability to consult with his attorneys—one in the afternoon of December 6 prohibiting Beckham from "speak[ing] to your attorneys or anyone about this case overnight," and one in the morning of December 7 barring discussion about Beckham's testimony—Beckham only complained about the latter order, which he characterized as being issued "before trial recommenced and thus still during the overnight break." Beckham then discussed two relevant United States Supreme Court cases—*Geders v.*

*United States*, 425 U.S. 80 (1976), in which the Court held that a trial judge's order completely

prohibiting a defendant from consulting with his attorney during a 17-hour overnight recess

between his direct- and cross-examination violated his Sixth Amendment right to counsel, and

*Perry v. Leeke*, 488 U.S. 272 (1989), in which the Court held that a trial judge's order completely

prohibiting a defendant from consulting with his attorney during a 15-minute mid-afternoon

recess between his direct- and cross-examination did not violate his Sixth Amendment rights.

Ultimately, Beckham argued that the trial judge ran afoul of *Geders*, and thus his Sixth

Amendment rights, by prohibiting him from discussing his ongoing testimony with his attorneys

during the approximately 20-minute break between the end of the initial morning conference and

the resumption of trial.

In a 4-3 opinion, the Kentucky Supreme Court rejected Beckham's Sixth Amendment

claim. *Beckham v. Commonwealth*, 248 S.W.3d 547, 553 (Ky. 2008). The court discussed

*Geders* and *Perry* and noted that "Beckham contends that the trial court's act of barring his

counsel from discussing his ongoing testimony is reversible error under *Geders*." *Id.* The court

then said:

> We reject Beckham's argument because *Geders* involved a trial court's
> complete denial of a defendant's right to consult with his attorneys during an
> overnight recess. By contrast, the case at hand involves a trial court's permitting
> the defendant to have contact with his attorneys during an overnight recess while
> limiting that contact by telling the attorneys to not discuss their client's ongoing
> testimony. So the situation in the case before us is different from the blanket
> prohibition on attorney-client contact condemned in *Geders*. As the Court held in
> *Perry*, "we do not believe the defendant has a constitutional right to discuss [his]
> testimony while it is in process." All the trial judge did in the case at hand was
> attempt to minimize the risk that Beckham would get "coaching tips" before the
> resumption of his cross-examination. Since the trial judge's actions attempted to

protect the integrity of the proceedings and did not impermissibly limit all attorney-client contact during the waning minutes of the overnight recess, we hold that the trial court's admonition to counsel did not abridge Beckham's Sixth Amendment right to counsel.

*Id.* at 553-54 (footnote omitted).

Beckham then filed a 28 U.S.C. § 2254 habeas petition in federal district court. R. 1, Page ID # 1. Once again, Beckham did not address the trial judge's order completely prohibiting him from consulting with his attorneys between the adjournment on December 6 and the reconvening of court the next morning; rather, Beckham only complained about the judge's order on the morning of December 7 prohibiting him from discussing his ongoing testimony with his attorneys during a 20-minute break. *Id.* at 26. Beckham argued that "the Kentucky Supreme Court's decision that [he] was not denied access to counsel in violation of his Sixth Amendment rights was an unreasonable application of clearly established federal law as stated by the United States Supreme Court" in *Geders* and *Perry*. *Id.* at 26-29.

The magistrate judge recommended that the district court deny Beckham's petition, reasoning that the Kentucky Supreme Court "correctly looked to *Geders* and *Perry* to resolve the Sixth Amendment right to counsel claim," and "held that *Geders* was distinguishable in that the facts presented in this case did not show the same type of 'blanket prohibition on attorney-client communication' as was evident in *Geders*." R. 30, Page ID # 820-21. The magistrate judge also stated that the Kentucky Supreme Court "correctly upheld the judge's prohibition from discussing [Beckham's] testimony, in light of the holding in *Perry* that a defendant does not have a 'constitutional right to discuss his testimony while it is in process.'" *Id.* at 821. The magistrate

judge accordingly concluded that the Kentucky Supreme Court's "decision was not contrary to or an unreasonable application of clearly established federal law." *Id.*

The district court adopted the magistrate judge's recommendation and denied Beckham's habeas petition, but also issued him a certificate of appealability on his Sixth Amendment claim. R. 33, Page ID # 837. Beckham now appeals.

There is some ambiguity as to which order is now under review. This stems from the state supreme court's characterization of the prohibitions imposed on Beckham and his attorneys. The language it used—writing that "the trial court[] permitt[ed] the defendant to have contact with his attorneys during an overnight recess while limiting that contact by telling the attorneys to not discuss their client's ongoing testimony," *Beckham*, 248 S.W.3d at 553—appears to have conflated two orders applying two different proscriptions.[2]

But the state supreme court's description and its use of the phrase "during an overnight recess" do not mean that it passed on the constitutionality of the overnight order that completely prohibited Beckham from consulting with his attorneys between the adjournment on December 6 and the reconvening of court the next morning. Indeed, Beckham failed to raise that issue on direct appeal and later in his habeas petition. Beckham also conceded in his reply brief that he "does not, in fact, assert a denial of his Sixth Amendment right to counsel during the overnight recess."

---

[2]The court's language mirrored the description Beckham presented in his brief to the court. *See* R. 9-8, Beckham Br., at Page ID 196 ("the trial court conceded that counsel could talk to Beckham during the overnight break, but wrongfully limited their conversation by saying they could not talk about the on-going testimony").

Although the overnight order appears to have infringed on Beckham's Sixth Amendment rights—because of its similarity in substance and effect to the order condemned in *Geders*—that order was not among the issues that the state supreme court reviewed. Consequently, it is not a proper focus of this appeal. Rather, as Beckham acknowledges, this case concerns only the trial judge's order prohibiting Beckham from discussing his ongoing testimony with his attorneys during the approximately 20-minute break between the end of the initial morning conference and the resumption of trial.

We review the Kentucky Supreme Court's decision—that the morning order did not violate Beckham's Sixth Amendment rights—under a highly deferential standard. Our task is not to determine whether the Kentucky Supreme Court's decision was right or wrong. Instead, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must decide whether the Kentucky Supreme Court's adjudication of Beckham's Sixth Amendment claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

> an *unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be "objectively unreasonable." This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (citations and quotations omitted).

Notwithstanding this highly deferential standard, Beckham argues that the Kentucky

Supreme Court unreasonably applied clearly established federal law as stated in *Geders* and

*Perry*. In *Geders*, the Court held that a trial judge's order completely prohibiting a defendant

from consulting with his attorney during a 17-hour overnight recess between his direct- and

cross-examination violated his Sixth Amendment right to counsel. 425 U.S. at 91. In *Perry*,

however, the Court held that a trial judge's order completely prohibiting a defendant from

consulting with his attorney during a 15-minute mid-afternoon recess between his direct- and

cross-examination did not violate his Sixth Amendment rights. 488 U.S. at 280. The *Perry*

Court distinguished *Geders* by reasoning:

> The interruption in *Geders* was of a different character because the normal
> consultation between attorney and client that occurs during an overnight recess
> would encompass matters that go beyond the content of the defendant's own
> testimony—matters that the defendant does have a constitutional right to discuss
> with his lawyer, such as the availability of other witnesses, trial tactics, or even
> the possibility of negotiating a plea bargain. It is the defendant's right to
> unrestricted access to his lawyer for advice on a variety of trial-related matters that
> is controlling in the context of a long recess. The fact that such discussions will
> inevitably include some consideration of the defendant's ongoing testimony does
> not compromise that basic right. But in a short recess in which it is appropriate to
> presume that nothing but the testimony will be discussed, the testifying defendant
> does not have a constitutional right to advice.

*Id.* at 284 (citation omitted).

Giving the Kentucky Supreme Court the benefit of the doubt, its application of *Geders*

and *Perry* to the facts of this case was not objectively unreasonable. The court cited *Geders* and

*Perry* and carefully articulated their holdings and rationales. The court then found that, unlike

*Geders*, which involved a blanket prohibition on attorney-client contact, "the case at hand

involves a trial court's permitting the defendant to have contact with his attorneys during an overnight recess while limiting that contact by telling the attorneys to not discuss their client's ongoing testimony." *Beckham*, 248 S.W.3d at 553. The Kentucky Supreme Court majority emphasized this point, saying that the trial judge "did not impermissibly limit all attorney-client contact during the waning minutes of the overnight recess." *Id.* at 554. Given this undisputed factual difference between *Geders* and the present case—in terms of *both* the length of the recess (*Geders*, long; here, short) and the breadth of the prohibition (*Geders*, total; here, only testimony-related)—it was not unreasonable for the Kentucky Supreme Court to conclude that the trial judge did not abridge Beckham's Sixth Amendment right to counsel by preventing him from discussing his ongoing testimony with his lawyers during the relevant 20-minute morning break.

*Perry* lends further support to the Kentucky Supreme Court's decision. Since the *Perry* Court upheld a trial judge's order completely prohibiting a testifying defendant from consulting with his attorney during a brief 15-minute recess, it was reasonable for the Kentucky Supreme Court to uphold the trial judge's order here, which only prohibited Beckham from consulting with his attorneys about his ongoing testimony during a brief 20-minute recess. This conclusion is controlled by *Perry*'s holding that a trial judge "may permit consultation between counsel and defendant during such a [brief] recess, but forbid discussion of ongoing testimony," and the Court's favorable citation to a case finding "no violation of right to counsel when judge barred defendant from discussing testimony, but permitted other contact with attorney, during 30-minute recess while defendant on stand." *Perry*, 488 U.S. at 284 n.8 (citing *People v. Stronger*, 432 N.E.2d 348, 351 (Ill. App. Ct. 1982), *aff'd in part and rev'd in part on other grounds*, 449

N.E.2d 1326 (Ill. 1983)). Thus, Beckham's claim that the Kentucky Supreme Court

unreasonably applied *Perry* is unavailing.

Ultimately, as Chief Justice Roberts has said, "AEDPA prevents defendants—and federal

courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable

decisions of state courts." *Renico*, 130 S. Ct. at 1866. The Kentucky Supreme Court's judgment

was not unreasonable.

For the foregoing reasons, we affirm the judgment of the district court.