**Jerod SOWELL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2004–CA–000348–MR.

Court of Appeals of Kentucky.

April 1, 2005.

Discretionary Review Denied by Supreme court Aug. 17, 2005.

Frank W. Heft, Jr., Louisville, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Clint Watson, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; DYCHE and KNOPF, Judges.

*OPINION*

COMBS, Chief Judge.

Jerod Sowell appeals from the judgment of the Jefferson Circuit Court of January 20, 2004, convicting him of possession of a controlled substance, resisting arrest, and third-degree criminal mischief. The judgment was based upon Sowell's conditional guilty plea to the offenses pursuant to RCr[1] 8.09. Sowell reserved the right to appeal the court's denial of his suppression motion. On appeal, he argues that the Commonwealth failed to establish the existence of a reasonable suspicion for stopping the vehicle in which he was riding at the time of his arrest. As we find no error in the ruling of the trial court, we affirm.

---

1. Kentucky Rules of Criminal Procedure.

On March 7, 2002, several police officers, including Detectives Steve Boughey and Joe Seeley, were conducting surveillance of a known crack house near the vicinity of National Turnpike and the Outer Loop in Louisville. The officers observed a red Toyota stop at the house. A man got out of the car and went inside the house. He then returned to his car. Detective Boughey recognized him from a photograph that he had recently seen in a warrant pack.

Detectives Boughey and Seeley followed the car and left other officers to continue the surveillance of the crack house. Based on their belief that there were several arrest warrants outstanding for the car's passenger, they pulled the car over to arrest him.

Detective Boughey approached the driver, Curtis Hamby, and asked him for his driver's license. The officer smelled marijuana and asked Hamby if he had any drugs or weapons in the car. Hamby acknowledged that he had smoked marijuana earlier in the day but that he had no drugs otherwise. He consented to a search of his person and got out of the car for that purpose. As the officer and Hamby walked to the rear of the car, Detective Seeley attempted to make an arrest of the passenger, the appellant, Jerod Sowell. Sowell attempted to flee, but he was quickly apprehended with the help of back-up officers who had arrived at the scene.

A search of Sowell and Hamby revealed that both men possessed plastic bags containing small amounts of crack cocaine. They were arrested and indicted on charges of first-degree trafficking in a controlled substance (cocaine). Sowell was also charged with resisting arrest and criminal mischief.

Hamby as co-defendant first challenged the legitimacy of the traffic stop and sought to suppress the drugs seized. Prior to trial, Hamby moved to suppress the drug evidence on the basis that he was subjected to a strip search in a public area. On May 22, 2003, an evidentiary hearing was conducted as required by RCr 9.78.

Detective Boughey testified that while watching the crack house, he recognized Sowell from a photograph that he had previously seen in a warrant pack. He testified that he and Detective Seeley decided to follow the car to arrest Sowell. After stopping the car, he approached Hamby, the driver, while Detective Seeley approached Sowell. Detective Boughey testified that after he was taken to the back of the car, Hamby voluntarily pulled a plastic bag containing drugs from the back of his pants and threw it on the ground.

Hamby presented a different version of the event. He abandoned his claim that he was disrobed in public; but he testified that he was coerced into revealing the drugs on his person. He related that one of the officers (and he could not remember which one) retrieved a pair of latex gloves from the police cruiser and threatened to subject him to an anal cavity search. In order to avoid such an intrusive search, Hamby stated that he managed to maneuver the plastic bag containing cocaine from between his buttocks, causing it to fall out of his trousers.

The trial court did not find Hamby's testimony credible. Following the hearing, the court held that the police had conducted a lawful investigative stop of the vehicle based on their awareness of Sowell's outstanding arrest warrants. The court did not believe Hamby's argument that he was coerced or threatened by the officers and instead found that he had relinquished the drugs voluntarily.

On June 5, 2003, Sowell filed a motion seeking discovery of the warrant pack

upon which Detective Boughey relied in identifying him. The motion was granted. The Commonwealth responded that it was not in possession of the warrant pack used by the police at the time of Sowell's arrest in March 2002. Accordingly, on August 7, 2003, Sowell moved to suppress the evidence seized during his arrest based on the Commonwealth's failure or inability to produce the warrant pack. He alleged that the cocaine was seized in violation of the Fourth Amendment of the United States Constitution and the principles set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He argued that without the production of the warrant pack, he could not adequately challenge the detective's allegation of probable cause as to the basis for his arrest and the search that followed. Hamby joined in Sowell's arguments and renewed his motion to suppress.

The Commonwealth argued that Sowell and Hamby misperceived the nature of the warrant pack. It explained that the pack was comprised of loose papers containing mug shots and other identifying information about criminals at large. The Commonwealth contended that it was unable to produce the sheets applicable to Sowell because they had been discarded after he was taken into custody. The Commonwealth asserted that it had no duty to preserve this information following Sowell's arrest.

In denying the motion to suppress, the trial court observed that "ideally" the information in the warrant pack should have been preserved. Nevertheless, the court emphasized the fact that there were four outstanding warrants for Sowell at the time of his arrest to serve as corroboration of the officer's testimony. Thus, the court concluded that the Commonwealth's failure to produce the warrant pack did not require suppression of the drug evidence seized from Sowell.

On December 2, 2003, Sowell entered his conditional plea of guilty. He received various sentences on the charges, all of which were ordered to run concurrently for a total of two years. This appeal followed.

■■■ Our standard of review on a motion to suppress is bifurcated. We accept those findings of fact which are supported by substantial evidence. *Simpson v. Commonwealth*, 834 S.W.2d 686, 687 (Ky.App. 1992). We review *de novo* the legal application of pertinent constitutional principles to the facts as found. *Commonwealth v. Banks*, 68 S.W.3d 347, 349 (Ky.2001), citing *Ornelas v. United States*, 517 U.S. 690, 691, 116 S.Ct. 1657, 1659, 134 L.Ed.2d 911 (1996). At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court. *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky.2002).

If he had reason to believe that Sowell was wanted on outstanding warrants (regardless of whether the warrants were issued for felony or misdemeanor offenses), Detective Boughey was undoubtedly authorized to stop the vehicle in which Sowell was riding. KRS[2] 431.005; *Baltimore v. Commonwealth*, 119 S.W.3d 532 (Ky.App.2003). Detective Boughey testified that he and Detective Seeley followed Sowell and stopped the vehicle for that very purpose. The trial court found that Detective Boughey was a credible witness and that he had the requisite reasonable suspicion to satisfy any Fourth Amendment concerns.

After our review of the tape of the suppression hearing, we conclude that there was substantial evidence to support the

---

**2.** Kentucky Revised Statutes.

court's findings. Detective Boughey testified that he and his fellow officers reviewed the warrant pack on a regular basis. He was quite definite in his testimony that he was aware of the outstanding warrants for Sowell's arrest at the time that he stopped the car. We may not second-guess the decision of the trial court as to the officer's credibility.

Sowell now argues that the issue cannot be resolved merely on the basis of the officer's credibility. He contends that the Commonwealth had the burden of producing documentary evidence—the warrant pack—in order to meet its burden of establishing the existence of a reasonable suspicion to stop the vehicle.

> [T]he accuracy and reliability of Boughey's identification of appellant could never be determined because the Commonwealth failed to produce the photograph which, by Boughey's own admission, was the sole basis of the stop. Thus, it cannot be ascertained whether the stop was based on Boughey's photographic identification or whether he simply played a hunch—two persons coming out of a suspected crack house might have some drugs—and got lucky.

(Appellant's reply brief, pp. 1–2.)

In making this argument, Sowell relies on *United States v. Antuna*, 186 F.Supp.2d 138 (D.Conn.2002), which is distinguishable in several respects. Unlike the suspect in *Antuna*, Sowell attempted to flee from the police to avoid arrest. The *Antuna* court noted several discrepancies between the officers' testimony and their written report of the incident preceding the arrest. Sowell has cited no such discrepancies between Detective Boughey's report and his testimony.

*Antuna* is also distinguishable from the case before us because of the nature of the information concerning the suspects prior to their arrest. Neither Sowell nor Hamby cross-examined Detective Boughey about what specific information in the warrant pack might have enabled him to identify Sowell. In contrast, the arresting officer in *Antuna* was thoroughly questioned about the poster that allegedly caused him to suspect that Antuna was a wanted fugitive from justice. After analyzing that evidence, the court determined that the officer's testimony "demonstrated that he was merely speculating about whether Antuna was wanted[ ]" and "had only an 'inchoate suspicion or mere hunch' that there was a warrant out for Antuna's arrest." *Id.* at 144, *citing Terry*, 392 U.S. at 27, 88 S.Ct. 1868. Since he failed to cross-examine Detective Boughey about the contents of the warrant pack, Sowell cannot point to any testimony to contradict the court's finding that the officer had correctly identified Sowell from the warrant pack.

Thus, we find no error in the determination of the trial court that the officers had a reasonable suspicion to stop the car because of their awareness of the warrants for Sowell. Therefore, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.