**James SIMMS, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2015-CA-001737-MR**

Court of Appeals of Kentucky.

SEPTEMBER 15, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Kathleen K. Schmidt, Department of Public Advocacy, Linda Roberts Horsman, Frankfort, Kentucky.

BRIEF FOR APPELLEE: Andy Beshear, Attorney General of Kentucky, Bryan D. Morrow, Assistant Attorney General, Frankfort, Kentucky.

BEFORE: COMBS, D. LAMBERT, AND NICKELL, JUDGES. .

OPINION

LAMBERT, D., JUDGE:

James Simms appeals from a Carter Circuit Court judgment imposing a sentence of two years and six months after a jury found him guilty of sexual abuse in the first degree as a lesser-included offense of rape. His sole argument on appeal is that the trial court erred in not suppressing statements made to the police without a *Miranda* warning.

## I. BACKGROUND

S.R., a twelve-year-old girl, told a school friend that she had a sexual encounter with Simms, her adult cousin, while he was babysitting her. The friend told a teacher who contacted Social Services. Kentucky State Police Detective Chris Boarman and a social services representative interviewed the girl who told them that Simms raped her.

Detective Boarman interviewed Simms at his residence later the same day. Simms denied raping S.R., but confirmed that he watched her while her guardian, her grandmother, was hospitalized. He also stated that he was a valuable member of the community and was due to become a father in the following month.

On January 15, 2014, S.R. had a forensic examination conducted at Hope's Place Child Advocacy Center. She reported that Simms raped her and wore a condom when he did so. The examination revealed medical trauma consistent with sexual activity. S.R. also had a medical condition which prevented the doctor from completing the examination.

On the next day, Detective Boarman again spoke to Simms, who recommended that he speak with a family friend, Wanda Click. Click told Boarman that S.R. had recanted her accusations. This led to a second interview with S.R. During that second interview, S.R. indeed recanted her allegations.

On January 27, 2014, S.R.'s lab test came back showing she was positive for a sexually transmitted disease. Social Services removed S.R. from her home. Detective Boarman interviewed S.R. again. This time, S.R. reaffirmed her original rape allegations and explained that Wanda Click had pressured her to change her story.

Simms later volunteered to be tested for sexually transmitted diseases; he tested positive for the same condition as S.R. Detective Boarman decided to interview him again and confront him with the test results. Simms agreed to drive to the police station for the interview, which was conducted by Detective Boarman and Detective Chris Carter.

At the police station, Boarman told Simms he was not in custody and was free to leave at any time. Boarman also told Simms that he could get up and walk out the door if he was uncomfortable. After these initial statements, Boarman confronted Simms with the lab results. Simms responded that he wanted to get something off his chest. Simms stated that S.R. had come on to him and told him that she had been looking at pornographic magazines and wondered how it might feel for someone to do to her what she had seen in the magazines. Simms admitted that S.R. touched his penis, he touched her vagina, and he performed oral sex on her. He then ended the interview and left the station. He was arrested the next day.

Simms was indicted on charges of first-degree rape (forcible compulsion), first-degree sodomy (forcible compulsion), and first-degree sexual abuse. Simms later moved to suppress his incriminating statements, arguing that he had been subjected to a custodial interrogation without being advised of his *Miranda* rights. The trial court denied the motion after finding that the facts proved Simms was not in custody during the police interview.

Prior to trial, Simms also moved to exclude the results of his and S.R.'s tests for sexually transmitted diseases. The Commonwealth agreed.

At trial, Simms's taped statements to the police were played to the jury. Dr. Alan Hirsch testified for the defense that the interview techniques used by the detectives were known to result in false confessions. The trial court granted directed verdicts on one count of first-degree sodomy and one count of first-degree sexual abuse because they were not supported by S.R.'s trial testimony. Following deliberations, the jury found Simms guilty of first-degree sexual abuse as a lesser-included offense of first-degree rape. This appeal followed.

## II. STANDARD OF REVIEW

An appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law. *Commonwealth v. Neal,* 84 S.W.3d 920, 923 (Ky. App. 2002)(footnotes omitted). "At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court." *Sowell v. Commonwealth,* 168 S.W.3d 429, 431 (Ky. App. 2005).

## III. DISCUSSION

On appeal, Simms first asserts that he was the subject of a custodial interrogation during the police station interview with Detectives Simms and Carter. Accordingly, Simms contends the court erred by allowing the prosecution to offer his incriminating statements at trial. For the following reasons, the statements were properly admitted into evidence.

"*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires police officers to advise suspects of their rights against self-incrimination and to an attorney prior to subjecting them to custodial interrogation." *Greene v. Commonwealth,* 244 S.W.3d 128, 135 (Ky. App. 2008). Consequently, if a suspect is not given a *Miranda* warning, incriminating statements made during the custodial interrogation can be suppressed. *Jackson*

v. *Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006), *as amended* (Mar. 29, 2006).

Custodial interrogation has been defined as questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of freedom of action in any significant way. . . . The inquiry for making a custodial determination is whether the person was under formal arrest or whether there was a restraint of his freedom or whether there was a restraint on freedom of movement to the degree associated with formal arrest. Custody does not occur until police, by some form of physical force or show of authority, have restrained the liberty of an individual. The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave. Some of the factors that demonstrate a seizure or custody have occurred are the threatening presence of several officers, physical touching of the person, or use of a tone or language that might compel compliance with the request of the police.

*Commonwealth v. Lucas*, 195 S.W.3d 403, 405-06 (Ky. 2006) (internal citations omitted).

After personally reviewing the interview recording, the trial court made the following findings: Simms voluntarily consented to meet with the officers at the police department, and he arrived in his own vehicle. Part of the interview, which lasted for a total of about two hours, was conducted outside so that Simms could smoke while seated in his truck with the engine running. Detective Boarman told Simms that he was not under arrest, or in custody, and that he was free to leave at any time. He was told at least three times during the interview that he was not going to jail that night. Boarman's tone was calm and empathetic. Boarman was not aggressive, confrontational, or acting in any manner to force or threaten Simms to make a statement. Regarding Detective Carter, the trial court found he used a quiet tone with Simms and was at no time threatening or inappropriate. The trial court's findings regarding the non-custodial character of Simms's interview were based on a review of the recording and supported by substantial evidence.

█ Simms points to the following factors to support his claim that he was in custody: the detectives initiated contact with him; the interview room was a confined space; the detectives were clearly in authority and had declined his offer to speak at his home; and the police department is an inherently intimidating locale. These points lend themselves to being addressed in turn.

█ First, the interview was not converted into a custodial interrogation merely because Simms was a suspect or because the questioning was initiated by the police. It is a basic requirement of law enforcement that police be able to interview identified suspects. Moreover, the interview did not become a custodial interrogation because it occurred at the police station. Although Kentucky recognizes a presumption that the interrogation in a police station interrogation room is custodial in nature, *id.* at 408 (internal citation omitted), that presumption can be overcome, if it is shown, "*e.g.*, that the defendant was informed that he was not under arrest, that he was free to leave at any time, and that he did, in fact, leave at the conclusion of the interrogation." *Id.*

In a case that is factually similar to the one at bar, *Peacher v. Commonwealth*, 391 S.W.3d 821 (Ky. 2013), the appellant was suspected of murdering a young child. The *Peacher* suspect agreed voluntarily to come to the police station to be interviewed. 391 S.W.3d at 848. He was not

searched, restrained or physically threatened, and the interview was conducted in an open office. *Id.* He was assured numerous times that he was not under arrest. *Id.* The interview was comprised of four segments lasting from twenty minutes to an hour, with breaks ranging from a couple of minutes to a couple of hours. *Id.* at 831. The detectives conducting the questioning became more accusatory as the interviews progressed. *Id.* The Kentucky Supreme Court held that Peacher was not in custody for purposes of *Miranda*, stating that "[a]lthough it is true that Peacher did not initiate the interview and that it took place at the police station, those facts alone do not indicate custody." *Id.* at 848.

Here, the trial court found that the detectives told Simms he was not under arrest and free to leave at any time. The trial court also found Simms consented to questioning at the police station and that he was able to leave the interrogation room and submit to questioning outside while smoking in his vehicle. Indeed, when compared to the *Peacher* suspect, the trial court's additional findings that the detectives were calm and non-threatening show Simms retained sufficient freedom to reasonably believe he was free to leave. *See Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed. 2d 383 (1995). As a matter of law, Simms was not in custody for *Miranda* purposes. Hence, *Miranda* warnings were not required and Simms's incriminating statements were properly presented to the jury.

■■■■ As a second argument on appeal, Simms asserts that he was subjected to improper interrogation techniques, including "question first," condemned by the United States Supreme Court in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), and the "Reid technique," in which officers forcefully assert a suspect's guilt and then minimize the seriousness of his actions. But these interrogation practices raise constitutional concerns only after a threshold finding that a suspect is in custody. *Jackson*, 187 S.W.3d at 300. "*Miranda*, and hence *Seibert*, apply only to custodial interrogations." *Peacher*, 391 S.W.3d at 849; *see also Jackson*, 187 S.W.3d at 311 ("[s]ince [the appellant] was not in custody at the time he made his initial incriminating statements to police, we do not believe the premises underlying the holding in *Missouri v. Seibert, supra*, are applicable to these facts."). The mere fact that an individual is the focus of a criminal investigation does not entitle him to *Miranda* warnings prior to police questioning. *Callihan v. Commonwealth*, 142 S.W.3d 123, 126 (Ky. 2004). Interrogation does not equal custody:

> *Miranda* does not forbid non-custodial interrogation. *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Custody does not materialize, moreover, merely because an interviewee admits to something potentially incriminating. *Emerson v. Commonwealth*, 230 S.W.3d 563 (Ky. 2007) (fact that investigators may have known that interviewee's answers to questions were false did not make further questioning custodial); *State v. Edwards*, 299 Conn. 419, 11 A.3d 116 (2011) (mere fact that interviewee implicates himself in crime does not convert a non-custodial interview into a custodial one).

*Peacher*, 391 S.W.3d at 847-48.

Accordingly, the trial court did not err in denying the motion to suppress. The judgment is affirmed.

ALL CONCUR.