RENDERED: AUGUST 4, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0870-MR

JEFFREY ALLEN KAY                                             APPELLANT


                            APPEAL FROM LYON CIRCUIT COURT
v.                         HONORABLE JAMES R. REDD, III, JUDGE
                                ACTION NO. 19-CR-00029


COMMONWEALTH OF KENTUCKY                          APPELLEE


AND


NO. 2022-CA-0871-MR


HEATHER ASHLEY KOST                                      APPELLANT


                            APPEAL FROM LYON CIRCUIT COURT
v.                         HONORABLE JAMES R. REDD, III, JUDGE
                                ACTION NO. 19-CR-00030


COMMONWEALTH OF KENTUCKY                          APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE:  CALDWELL, COMBS, AND KAREM, JUDGES.

KAREM, JUDGE:  Jeffrey Allen Kay and Heather Ashley Kost bring these appeals from the Lyon Circuit Court's findings of fact, conclusions of law, and order denying their motions to suppress evidence recovered in a traffic stop. Because Kay and Kost's arguments for suppression are identical and arise from the same factual nexus, their appeals are being heard together by the same panel of this Court.  Upon careful review, we affirm the denial of the motion to suppress in both cases.

## Factual and procedural background

At the suppression hearing, State Trooper Lewie Dodd testified that he was working the criminal interdiction patrol when he observed an older RV with South Carolina registration traveling eastbound on I-24.  The RV was having trouble maintaining its lane and it crossed the center line and the fog line several times.  Trooper Dodd followed the RV for approximately one mile before turning on his blue lights.  According to the transcript of his conversation with the police dispatcher, the RV slowed down to about fifty-five miles per hour, but Dodd was not sure if the driver had seen him or was planning to stop.  The RV did eventually pull over after travelling approximately two miles.  Dodd approached the

passenger side door and asked the driver, Kay, to get out of the RV. He testified that for safety reasons he would usually get the driver of an older RV outside to talk to him because he could not see who was in the back of the vehicle. Kay told Dodd he was not wearing pants. Dodd allowed him to go to the back of the RV to get dressed and get his wallet.

When Kay got out of the RV, Trooper Dodd saw that his entire body was shaking. He described Kay as having a "literal come-apart" by the side of the road, so he tried to set him at ease by talking to him. Meanwhile, Trooper T.J. Williams arrived and began talking to the passenger in the RV, Kost. Dodd took Kay back to his police car in order to check his driver's license. He explained to Kay the reason he turned the blue lights on in the first place was because the RV was having trouble staying between the lines. Kay told Dodd he had been having mechanical problems with the RV and was learning to do work on it. They chatted on this topic briefly. Kay told Trooper Dodd that they were heading back to South Carolina from Minnesota, where they had been visiting Kost's cousin.

Trooper Williams testified that when he arrived at the scene Trooper Dodd was talking to Kay in front of the police car. Kay's whole body was shaking, and Trooper Williams thought it might be due to a medical condition, but it was just that Kay was nervous. He described Kost as also very nervous. She told him they had just been "driving around" which made Williams suspicious

because the high price of gas made it unlikely they would just "drive around" in a big RV. He asked where they were coming from, and she told him Kansas and before that Colorado.

Trooper Williams came back and told Trooper Dodd that Kost had told him they were coming from Colorado. Trooper Dodd asked Kay if he had marijuana in the vehicle and if that was why he was shaking so badly. Kay said he had a couple of quarters, which Dodd took to mean two quarter-ounce packages. Dodd ordered Kost out of the vehicle. Meanwhile, Williams spoke to Kay who told him they had four pounds of marijuana in a storage box under the RV. The troopers searched the RV and recovered the marijuana as well as approximately one pound of THC gummies in the back bedroom of the RV and $770 in cash.

Trooper Dodd testified that he believed the swerving of the RV was due to an equipment problem with the vehicle and that Kay was not impaired. He also believed, however, that it was not normal to shake the way Kay was and therefore he continued talking to him. Upon questioning by the trial court, Dodd testified that he never asked consent to search and that he had probable cause to search based on Kay's uncontrollable shaking; the inconsistency of Kay and Kost's stories of where they were traveling from; the fact that they were actually coming from Colorado, a "source state" for marijuana; Kay's failure to divulge they were coming from Colorado; and Kay's admission that he had two quarters.

The trial court found the initial traffic stop was reasonable because it believed Trooper Dodd's testimony that the RV crossed the center line at least twice. It concluded that the troopers had a reasonable articulable suspicion to extend the stop and probable cause to search the vehicle considering the totality of the circumstances, which included Kay's extreme nervousness and noticeable shaking, the discrepancy in itinerary related by Kay and Kost, the fact that Kay admitted to having a couple of quarters of marijuana, and the fact they had been to Colorado, a known source state for marijuana.

Following a trial, at which they renewed their objection to the introduction of any evidence obtained as a result of the traffic stop, Kay and Kost were each convicted of complicity to trafficking in marijuana (more than eight ounces and less than five pounds) and complicity to possession of drug paraphernalia. They each received a sentence of two years. These appeals by Kay and Kost followed.

## **Standard of review**

> An appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct a de novo review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.

*Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002) (footnotes omitted).

-5-

## Analysis

Kay and Kost raise two arguments on appeal: (1) that Trooper Dodd did not have probable cause to initiate the traffic stop; and (2) the stop was impermissibly prolonged.

**i. The traffic stop was supported by probable cause**

A traffic stop is a seizure for purposes of the Fourth Amendment. *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013). The Fourth Amendment permits a police officer to conduct a traffic stop "if he or she has probable cause to believe that a traffic violation has occurred." *Id.* As long as probable cause exists, the officer's subjective motivations for the stop are not relevant. *Id.*

The appellants argue that the trial court's finding that Kay committed a traffic violation that justified the initial stop by Trooper Dodd is not supported by substantial evidence. The trial court expressly stated that the stop was justified because it believed Trooper Dodd's testimony that he saw the RV cross the center line at least twice. The appellants argue that Dodd's in-car video clearly contradicts his testimony because it does not show the RV crossing the center line or the fog line. Our review of the video shows the RV swaying from side to side in its lane and it does appear to cross the fog line several times. Trooper Dodd testified that he activated his blue lights only after following and observing the RV

for at least a mile and this is confirmed by the transcript of his radio conversation with the police dispatcher. The in-car video did not begin filming until after he activated the blue lights. Trooper Dodd's observation that the RV was swaying back and forth is confirmed by the following exchange between Dodd and Kay in their recorded conversation:

> Trooper Dodd: Okay. Let's get over here a little where I can talk to you. I got – the reason I turned the lights on in the first place is you're having trouble keeping this thing between the lines. I'm guessing the wind blowing you around.
>
> Kay: Yeah, the wind blows me around. It's a little wobbly. I do the best I can.

Trooper Dodd testified that after talking to Kay, he did not believe he was impaired and that the swerving was due to mechanical issues with the RV.

Although the video shows the RV swerving over only the fog line, the video does not record the entire period that Trooper Dodd followed the vehicle, only the period after he activated his blue lights. The trial court stated that it believed Dodd's testimony that the RV crossed the median line at least twice. "At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court." *Sowell v. Commonwealth*, 168 S.W.3d 429, 431 (Ky. App. 2005). It was well within the trial court's discretion to decide that Dodd was a credible witness. Dodd's testimony is confirmed by Kay's own statements in his conversation with

Dodd, when he agreed that it was difficult to keep the RV on course and he was doing the best he could. Substantial evidence in the record supports the trial court's conclusion that the initial stop was supported by probable cause.

**ii. The traffic stop was not unreasonably extended**

Next, the appellants argue that the traffic stop was unreasonably extended beyond its original purpose of investigating why the RV was having difficulty staying in its lane. In *Rodriguez v. United States*, the United States Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." 575 U.S. 348, 350-51, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015) (internal quotation marks and citations omitted). When, as in this case, a seizure is "justified only by a police-observed traffic violation, [it] . . . become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Id.*

The Kentucky Supreme Court has set forth the following standards by which to gauge the permissible length and scope of a traffic stop:

> While officers may detain a vehicle and its occupants to conduct an ordinary stop, such actions may not be excessively intrusive and must be reasonably related to the circumstances justifying the initial seizure. . . . An officer's ordinary inquiries incident to traffic stops do not impermissibly extend such stops. Included in such ordinary inquiries are an officer's review of the driver's information, auto insurance and registration, and

-8-

performing criminal background checks of the driver and any passengers during the otherwise lawful traffic stop.

*Commonwealth v. Mitchell*, 610 S.W.3d 263, 269 (Ky. 2020).

A police officer is permitted to extend the stop "beyond the time required to complete its initial purpose," but only if something occurs during the stop to create a "reasonable and articulable suspicion that criminal activity is afoot." *Id*. "Once the purpose of a traffic stop is completed, a police officer 'may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) (some internal quotation marks omitted) (quoting *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006)).

The appellants argue that no new facts emerged after the stop, with the exception of Kay's nervousness, that would have given the troopers an independent reason to extend the stop beyond the time necessary to issue a citation for the traffic violation. The trial court concluded that the troopers had a reasonable, articulable suspicion to extend the stop and probable cause to search the vehicle considering the totality of the circumstances, including Kay's extreme nervousness and noticeable shaking, the discrepancy in the itinerary provided by Kay and Kost, the fact that Kay admitted to having a couple of quarters of marijuana, and the fact they had been to Colorado, a known source state for

marijuana. The trial court also stated that the troopers detected the smell of marijuana, but this is unsupported by any evidence in the record.

"When considering the totality of the circumstances, a reviewing court should take care not to view the factors upon which police officers rely to create reasonable suspicion in isolation. Courts must consider all of the officers' observations, and give due weight to the inferences and deductions drawn by trained law enforcement officers." *Greene v. Commonwealth*, 244 S.W.3d 128, 133-34 (Ky. App. 2008) (citations omitted).

"[N]ervousness – even extreme nervousness – is an unreliable indicator of someone's dangerousness, especially in the context of a traffic stop." *United States v. Noble*, 762 F.3d 509, 522 (6th Cir. 2014) (citations and quotation marks omitted). But nervousness can be "a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000).

The appellants argue that, with the exception of Kay's nervousness, the additional facts relied upon by the trial court emerged as a result of improperly prolonged questioning. They contend that the discrepancy between Kay and Kost's accounts of their itinerary did not become known to Trooper Dodd until after Dodd had impermissibly questioned Kay about matters unrelated to the

reason for the stop, arguing that Dodd appeared to make no effort to determine if the swerving of the RV was due to an impairment from drugs or alcohol.

Trooper Dodd suspected that the driver of the RV was impaired or that the RV itself had mechanical problems. Upon speaking with Kay, he was able to determine that his shaking was due to extreme nervousness, not impairment. He then asked about the condition of the RV in order to determine if the swerving was due to a mechanical problem. The appellants argue that this conversation was an attempt to stall the proceedings in order for Trooper Williams to question Kost separately about the conflicting itinerary evidence and they point out that Trooper Dodd never even issued a citation for the traffic violation.

But Trooper Dodd's questioning of Kay was well within the scope of the stop in attempting to determine why the RV was having trouble staying in its lane. His subsequent questions about Kay's travel plans were also permissible. "[Q]uestions about [a motorist's] travel plans are ordinary inquiries incident to a traffic stop." *Carlisle v. Commonwealth*, 601 S.W.3d 168, 177 (Ky. 2020) (citations omitted). "[T]ravel-plan questions ordinarily fall within the mission of a traffic stop. In fact, every [federal] circuit to address the issue post-*Rodriguez* has reached the same conclusion." *United States v. Cole*, 21 F.4th 421, 430 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1420, 212 L. Ed. 2d 405 (2022) (collecting cases).

Trooper Dodd's conversation with Kay was well within the scope of the traffic stop; Trooper Dodd ascertained that Kay's shaking was not due to impairment by chatting with him, questioned him about the roadworthiness and condition of the RV, and about his travel itinerary. The traffic stop was not unreasonably prolonged and did not violate *Rodriguez*.

## Conclusion

The trial court's findings of fact are supported by substantial evidence, and it did not err as a matter of law in denying Kay and Kost's motions to suppress. The final judgments and sentences in both their cases are affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANTS:

Matthew E. Schalk
Princeton, Kentucky

BRIEFS FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky